GULF, COLORADO & SANTA FE RAILWAY CO. v. J. E. STANLEY.

No. 331.—Decided December 12, 1895

1. **Measure of Damages—Cattle Injured.**

Cattle were shipped from Lampasas, Texas, to Elgin, Kansas, not for immediate sale, but to be put upon pastures, fattened, and then sold. In an action by the shipper against the Railway for damages to the cattle in the shipment it was proper to instruct the jury that the measure of damages was the difference between the market value of the cattle, in the condition in which they were delivered at Elgin, and what their market value would have been at that place had they been properly cared for during the trip. (P. 44.)

2. **Value—Opinion.**

Value is a matter of opinion, and testimony as to value in such case (amount of injury to a herd of cattle in a shipment) may be somewhat speculative and unsatis-factory and yet be competent. (P. 44.)

3. **Written Freight Contract—Unreasonable.**

While a shipper may make a contract with a carrier limiting its responsibility, still the conditions must be reasonable. It has been held that a condition to recov-ery that the shipper give notice of amount of damages,. etc., on reshipment is not reasonable, nor is a limitation of forty days within which suit may be filed legal. (P. 46.)

ERROR to Court of Civil Appeals for Third District, in an appeal from Lampasas County.

*J. W. Terry* and *Charles K. Lee,* for plaintiff in error.

*Mathews & Browning,* for defendant in error.

GAINES, Chief Justice.—The suit was brought by defendant in error to recover of plaintiff in error damages for alleged injuries to cattle transported for him over the line of the company and that of the Atchison, Topeka and Santa Fe Railway Company.

The time at our disposal precludes us from considering in detail, in this opinion, all the points raised by the numerous assignments in the Court of Civil Appeals, all of which are insisted upon in this court. We will therefore confine our discussion to a few of the more prominent questions presented in the petition for the writ of error.

The plaintiff in the District Court testified upon the trial that he applied to the agent of the defendant company at Lampasas, in this State, for transportation of a herd of cattle from that point to Elgin, Kansas; that the agent agreed to furnish the cars for the carriage of the cattle, and to transport them to their destination at the rate of $50 per car; that when the cattle reached the station it was found necessary to employ two separate trains of cars for their transportation; that he took charge of the cattle on the first train, and that he placed one Harmon, as agent, in charge of those upon the other. The defendant company's line reached only to Purcell, in the Indian Territory, where it connected with the Atcihson, Topeka and Santa Fe Railway, which led to Elgin, the point of destination of the cattle. The plaintiff further testified, in effect, that with the exception of a delay of a few hours, and a resultant delay in feeding and watering, the cattle reached Purcell, the point of connection, in good condition; but that at that point they were taken off the cars and crowded together in muddy pens, in such numbers that it was impossible for them to take sufficient food and water; and that in consequence of this treatment some of them died on the route to Elgin and after reaching there, and the others were greatly injured and deteriorated in value. He further testified, that after the cattle of which he took charge were loaded upon the train at Lampasas and the train was about to start, upon the demand of the conductor, he signed a contract of shipment which he did not have time to read. Harmon, his agent, also testified that, just before the train which he accompanied left, he also signed a contract, but that he had no authority from his principal to alter the contract previously made with the agent of the company. The contracts themselves were signed by the agent for the company, and by Hughes & Rathmell, to whom the cattle were consigned for pasturage; the names of the plaintiff and of Harmon appeared signed only to the drovers' passes, which were a part of the contracts. It therefore seems that the plaintiff and Harmon's testimony referred to these latter signatures.

The agent of the company also testified as to the transaction between him and the plaintiff, but did not deny either the agreement to furnish the transportation or the rate which was testified to by the plaintiff.

Hughes and Rathmell were the plaintiff's agents, and the contracts were both signed in their name. The company's agent testified that, when the contract was made for the shipment, Hughes, a member of

the firm of Hughes and Rathmell, was present and participated in the conversation, and that he did not know that the cattle belonged to plaintiff. The undisputed evidence showed that the cattle belonged to plaintiff, and that they were shipped for his benefit. It is not important whether the agent knew for whom the cattle were shipped or not, for the principal in the contract, whether disclosed or undisclosed, had the right to sue upon it. (Heffron v. Pollard, 73 Texas, 96.)

A careful consideration of the evidence as to the amount of damages satisfies us that it was sufficient to sustain the verdict in that respect.

It is insisted, however, that since the testimony showed that the cattle were not shipped for immediate sale, but were to be put upon pastures and fattened and then sold, the court erred in charging the jury that the measure of the plaintiff's damages was the difference between the market price of the cattle in the condition in which they were delivered at Elgin, and what their market price would have been at that place had they been carefully cared for during the trip; and that it also erred in refusing a charge to the effect, that the plaintiff was entitled only to recover the amount of the additional expense to which he was subjected by reason of their injuries in preparing them for market. We think the court gave the correct measure of damages. That the rule laid down is the ordinary rule in such cases is well settled in this state and in other jurisdictions. We see nothing in this case to take it out of the ordinary rule. In a case strikingly like this the Supreme Court of the United States say: "The difference between the market value of the "cattle in the condition in which they would have arrived but for the "negligence of the defendant, and their market value in the condition in "which, by reason of the negligence, they did arrive, constituted the "proper rule of damages. It was not material whether the plaintiffs in-"tended to keep the cattle upon their farms, for breeding purposes, or "to sell them upon the market. The depreciation in value of the cattle "was the same in either case." (Railway v. Estill, 147 U. S., 591.) We think it true that, as to the damages for injuries to personal property resulting from a wrong of a defendant, no rule can be laid down, which is applicable to every case. In each case that rule will be adopted which will lead to the most accurate results. Here the cattle, in their injured condition, had a market value at Elgin. They would have had a value in the market if they had arrived uninjured. The difference in that value, if correctly determined, furnishes a safe and certain criterion of the loss. It is true that value is a matter of opinion, and that testimony as to value in such a case may be somewhat speculative and unsatisfactory; but we do not see that the rule insisted upon by plaintiff in error would have led to a more satisfactory result. (Railway v. Estill, supra.) From a logical standpoint the rule of the difference in market value is also the correct one. To make the plaintiff whole he should recover a sufficient sum to enable him to sell the injured property and to replace it with that which is uninjured without loss.

The written contract contained stipulations limiting the company's

liability to its own line. The judge, in his general charge, instructed the jury, in effect, that, if they found that the parties had first made an oral contract and then entered into a written contract for the transportation of the cattle, the latter would govern, and that, if they found that the cattle had been injured during the transportation through the negligence of the defendant, they would award the plaintiff damages according to the rule laid down in a special instruction to be given. The special instruction authorized a recovery for such injuries only as the cattle received while on defendant's own line. No charge was given which warranted a more extended recovery. Hence the court was not in error in refusing charges limiting the damages to such as occurred while the cattle were in the possession of the defendant company.

The written contract also contained the following stipulations: "Ninth. That for the considerations aforesaid, said shipper further "agrees that, as a condition precedent to his right to recover any dam- "ages for any loss or injury to his said stock during the transportation "thereof, or at any place or places where the same may be loaded or "unloaded for any purpose on the company's road, or previous to loading "thereof for shipment, he, they, or his or their agents in charge of the "stock, will give notice in writing of his claim therefor, specifying the "nature of the claim, to its station master at said last named station on "the company's road, before said stock is removed from said station, and "before the same shall have been removed, slaughtered, or intermingled "with other stock, and will not move said stock from said station until "the expiration of three hours after the giving of such notice, to the end "that such claim may be fully and fairly investigated; and that a failure "to comply with the terms of this clause shall be a complete bar to any "recovery of any and all such damages. The written notice herein pro- "vided for can not and shall not be waived by any person except such "station master, and by him only in writing."

"Tenth. And it is furthermore hereby expressly provided and mu- "tually agreed that no suit or action against the company for the recovery "of any claim by virtue of this contract, or for loss or damage to said "stock, or decrease in the market value thereof, from delay or any other "cause, while in transportation or at stations on the company's road, "or for breach of any alleged contract concerning the shipment of said "stock or the furnishing of cars made before the receipt of the stock by "the company, or before the execution hereof, or on account of the "breach of any written or verbal agreement or contract whatever con- "cerning said stock prior to the execution hereof, shall be sustained in "any court of Law or Chancery, unless such suit or action shall be com- "menced and citation served within forty days next after the loss or "damage shall have occurred; and should any suit or action be com- "menced against the company after the expiration of the aforesaid forty "days, the lapse of time shall be taken and deemed conclusive evidence "against the validity of such claim or cause of action, and shall be a

"full and complete bar to such suit, any statute of limitations to the con-"trary notwithstanding."

In view of the testimony and the findings of the Court of Civil Appeals, we can not say that no other conclusion was authorized than that the written contracts were executed without consideration. If, after the cattle were placed upon the train, the plaintiff and his agent had signed them without knowing their contents and without any new consideration, it may be that they should have been held void. (Railway v. McCarty, 82 Texas, 613.) But since they were signed by Hughes and Rathmell, who, as the plaintiff himself testified, were authorized to do so, and since it does not appear when and under what circumstances they so signed, it can not be said that they were executed without consideration. It is evident that the trial court was of opinion that, at least, the jury was authorized to find that the oral agreements were supplemented by the written contracts. The plaintiff admitted in his testimony that no notice was given to the agent of the company at Purcell of the damages to the cattle, and it appears clearly from the evidence that the suit was not brought within forty days from the time of the breach of the contract. The defendant by counsel asked the court to charge the jury that, if the notice was not given, the plaintiff could not recover; and also, in effect, that, if the suit was not instituted within forty days from the time the cause of action accrued it was not bound. Both of these charges were refused, and their refusal brings up the question as to the validity of the two stipulations in the contract which have been quoted.

A stipulation of the character of these in question, to be valid, must be reasonable. At the time the cattle were reshipped at Purcell, the plaintiff, according to his own testimony, knew that his cattle had been crowded in pens and had suffered for the want of food and water, but did not know the extent of his damages. Under the circumstances, he could at most have made only a vague complaint, which would have subserved no useful purpose to either party. It was by no means certain that any serious loss would ensue, and, if the contract is to be construed as requiring notice in such a case, we think it must be held unreasonable.

Whether the stipulation, as to the time in which suit should be brought and the citation served, is reasonable or not is not an open question in this court. It was held to be unreasonable in the case of this same company against Hume Bros., 87 Texas, 211.

We find no error in the judgments of the District Court or of the Court of Civil Appeals, and they are affirmed.

*Affirmed.*