### St. Louis, Iron Mountain & Southern Railway Company v. Jot Gunter.

#### Decided December 15, 1906.

**1.—Shipment of Cattle—Market Value—Testimony.**

The admission in evidence of a part of an answer of a witness concerning the market value of cattle at a certain time and place, when the part admitted is intelligible, and the purpose for which it is admitted is stated by the court at the time, is not prejudicial error.

**2.—Bill of Exception—Exclusion of Testimony.**

When a bill of exception to the exclusion of testimony does not show what the testimony would have been, the ruling of the court can not be considered.

**3.—Same—Leading Questions—Discretion of Court.**

A bill of exception which complains of the ruling of the court in permitting plaintiff's counsel to ask leading questions of his witness, but which points out no particular question, can not be considered. In the matter of leading questions considerable discretion is vested in the court.

**4.—Testimony—Conclusion of Witness.**

It was not error to exclude the following question propounded to a witness: "Do you say in this case that your shipment was not gotten over the road as soon as possible under the circumstances?" because it called for the opinion of the witness on the very issue the jury were to determine.

**5.—Market Value of Cattle—Testimony.**

A witness who is an experienced cattleman, and acquainted with the cattle market on the date in question, can testify to the market value of a certain class of cattle on said date.

**6.—Shipment of Cattle—Reasonable Time.**

It is permissible for a witness to testify that on previous occasions he had shipped cattle over the same route in a certain time.

**7.—Shrinkage of Cattle—Opinion Testimony.**

A witness experienced in shipping cattle to market may testify as to the probable shrinkage in cattle in a given case.

**8.—Weight of Cattle—Proof.**

To show how much was received for a shipment of cattle, a witness who sold the cattle, saw them go on the scales to be weighed, and a few minutes afterward received the official weighmaster's certificate of weights, and consummated the sale by them, may testify as to the weight of said cattle.

**9.—Impartial Charge.**

The court, after instructing the jury as to plaintiff's theory of the case, continued: "So, of course, if you should believe from the evidence that the defendant did exercise ordinary care to transport said cattle without unreasonable

delay," etc. Held, the expression, "of course," did not indicate any disparagement of defendant's defense.

**10.—Trainload of Cattle—Unreasonable Delay.**

Where there were fourteen carloads of plaintiff's cattle, and after five hours allowed for feed and rest they were delayed at a station waiting for a regular train to take them out, it was not error for the court to charge that any delay in the transportation of plaintiff's cattle on account of defendant's regular train for an unreasonable length of time would not be justified without some reasonable explanation.

Appeal from the District Court of Dallas County. Tried below before Hon. Thomas F. Nash.

*W. T. Henry,* for appellant.—The testimony of a witness should not be admitted in a partial form so that without its connection it conveys a different meaning to the jury from that expressed by the witness. St. Louis, I. M. & S. Ry. Co. v. Gunter, 86 S. W. Rep., 938.

In determining whether or not a shipment of cattle was transported over a railway line in a reasonable time, it is not permissible to introduce evidence of general practice or custom generally prevailing among railroads, but the inquiry is, whether or not the cattle were shipped a reasonable time under all of the facts and circumstances of the particular case. Gulf, C. & S. F. Ry. Co. v. Rowland, 82 Texas, 166; Missouri, K. & T. Ry. Co. v. Johnson, 92 Texas, 380; Gulf, C. & F. Ry. Co. v. Evansich, 61 Texas, 6; International & G. N. Ry. Co. v. Eason, 35 S. W. Rep., 210.

It is not permissible in an action for delay to show the time made over the route on other isolated occasions. Gulf, C. & S. F. Ry. Co. v. Irvine & Woods, 73 S. W. Rep., 540; Texas & P. Ry. Co. v. Byers Bros., 84 S. W. Rep., 1087; 5 Am. & Eng. Ency. of Law, p. 246, note.

In order to have a legal right to recover extra expense incurred by reason of delay to a shipment of cattle, it must be made to appear from the evidence that such expense was actually incurred, and that it was necessary and proper for the expense to be incurred. St. Louis, I. M. & S. Ry. Co. v. Gunter, 86 S. W. Rep., 939.

A witness who did not weigh cattle, and who has no personal knowledge of their actual weight, can not be allowed to testify to the weight of cattle. International & G. N. Ry. Co. v. Startz, 77 S. W. Rep., 1; Gulf, C. & S. F. Ry. Co. v. Baugh, 42 S. W. Rep., 245.

*Coke & Coke* and *Don A. Bliss,* for appellee.—The trial court did not err in permitting the witness, Mahar, to give his opinion as to what the cattle would have sold for on the market on Friday, December 12, 1902, had they reached St. Louis on that day in time to have been sold, said witness having duly qualified himself to testify as to this matter. Texas & Pac. Ry. Co. v. Donovan, 86 Texas, 378; Ft. Worth & D. C. Ry. Co. v. Daggett, 27 S. W. Rep., 186; Houston & T. C. Ry. Co. v. Williams, 31 S. W. Rep., 556; Gulf, C. & S. F. Ry. Co. v. Wedel, 42 S. W. Rep., 1030; Texas Central Ry. Co. v. Fisher, 43 S. W. Rep., 584; Missouri, K. & T. Ry. Co. v. Cocreham, 30 S. W. Rep., 1118; Chicago & C. Ry. Co. v. Halsell, 81 S. W. Rep., 1241.

The testimony of the witness, Mahar, that previous shipments of cattle made by him over appellant's road during the same season, the last one being in November, 1902, had gone through from Sherman to St. Louis in thirty-six hours, was admissible as bearing upon the issue as to what would have been a reasonable time within which the cattle should have been transported by appellant, and the trial court did not err in admitting said testimony.  Gulf, C. & S. F. Ry. Co. v. Irvine, 73 S. W. Rep., 540; St. Louis, I. M. & S. Ry. Co. v. Gunter, 86 S. W. Rep., 938.

The trial court did not err in admitting the testimony of the witnesses, Mahar and Eaton, to the effect that extra expense in the way of feeding the cattle was caused by appellant's delay, it being shown by the testimony that said expense was reasonable and necessary, and the court did not err in submitting this item of damage to the jury in its charge.  Gulf, C. & S. F. Ry. Co. v. Hume, 87 Texas, 221.

The trial court did not err in admitting the testimony of the witness, Mahar, as to the loss in weight the steers suffered by reason of their being kept over in St. Louis and then shipped on to Chicago, said witness having shown that he was duly qualified to express an opinion on the subject, and it being a proper subject for expert testimony.  Ft. Worth & D. C. Ry. v. Greathouse, 82 Texas, 104.

The trial court did not err in permitting the witness, Eaton, to testify to the weights of the steers sold by him in Chicago, he having testified that while he did not do the actual weighing, he saw the cattle go on to the scales to be weighed, and a few minutes afterward received the official weighmaster's certificate of the weights, which weights were accepted as the basis of settlement in accordance with the sale he had previously negotiated, and that before testifying he had refreshed his memory as to the weights by examining the original scale tickets, which were made at the time in the regular course of business, which original scale tickets were beyond the jurisdiction of the court.  Said testimony was at least admissible for the purpose of showing how much was received for said cattle.  Harvey v. Edens, 69 Texas, 420; McBride v. Willis, 82 Texas, 141; Veck v. Holt, 71 Texas, 715; Meyer v. Hale, 23 S. W. Rep., 991; Lewis v. San Antonio, 7 Texas, 288.

RAINEY, Chief Justice.—This suit was brought by Jot Gunter against the St. Louis, Iron Mountain & Southern Railway Company to recover damages caused to a shipment of cattle from Sherman, Texas, to East St. Louis, Illinois, over the Texas & Pacific and Iron Mountain Railways.  The damages were alleged to have been caused by the unreasonable delay in transporting and delivering said cattle at East St. Louis by the Iron Mountain Railroad, which compelled the sale of 57 cows at East St. Louis at a reduced price and the reshipment of 281 steers to Chicago, where they were sold at a reduced price, and also incurred extra expense arising from defendant's delay in transporting the same.

Defendant plead that by the terms of the shipping contract it was only responsible for injury by reason of its own default.  That said cattle were not to be transported within any specified time, nor delivered in time for any particular market, and it was further provided that plaintiff assumed the duty of looking after the cattle in transit.  That the

cattle were not injured from any cause for which defendant is responsible under the terms of the contract. That the cattle were transported in a reasonable time and delivered to its connecting carrier at St. Louis, after which it had no connection with the cattle.

A trial resulted in a verdict and judgment for the sum of $1,200 in plaintiff's favor, and the railway company appeals.

The evidence shows that late on the afternoon of December 9, 1902, plaintiff shipped from Sherman, Texas, over the Texas & Pacific Railway 281 steers and 57 cows, destined to East St. Louis, Illinois. Said cattle were delivered to the Iron Mountain Railway Company at Texarkana, Texas, at 2 a. m. of the 10th of December, and reached East St. Louis Friday, December 12, 1902, about 5 p. m., after the close of the market for that day. On the next day, Saturday 13, the market had declined and the cows were sold at a loss of $2.50 per head. There was no market for the steers and to prevent further loss the steers were reshipped to Chicago, where a better market was anticipated. The run from Texarkana to St. Louis over defendant's road took about 62 hours on this occasion, when the run from Sherman to East St. Louis could reasonably be made in 36 hours over the same route. We therefore hold the defendant negligently failed to deliver the cattle in a reasonable time. By reason of the delay the cattle lost in weight, extra expense accrued and there was a decline in the market, from all of which causes the plaintiff was damaged in the sum of $1,200, the amount of the verdict and judgment.

Appellant's first assignment of error complains of the admission of the testimony of W. B. Eaton, as shown by its bill of exception, as follows: "The witness was asked: 'What was the condition of said cattle with reference to marketability at the time they reached Chicago? Let your answer to this be full, stating whether said cattle were in good condition or otherwise, and in what respect? Was there anything in the appearance of the cattle when they first reached Chicago to indicate that they had been delayed in shipment; if so, what were such indications? These cattle had been shipped from near Sherman, Texas, first to St. Louis and then forwarded from St. Louis to Chicago. State whether there would have been any difference in the market value of said cattle in Chicago at the time they were sold if they had been shipped direct from Sherman, Texas, to Chicago without being stopped over in St. Louis and then reshipped to Chicago, and if they had been shipped to St. Louis first and then reshipped from that point to Chicago. If you say there was such a difference, then state what would cause such a difference? What is a reasonable time within which cattle could at said period be shipped from Sherman, Texas, to Chicago? What effect does delay in transporting cattle by railroad have upon the market value of cattle in Chicago, and what effect did such delay have upon such market value at said time? Did at said time a delay of one, two or three days in the transportation of such cattle have any effect upon their market value in the city of Chicago, at said time; if so, how much?'" The latter part of the answer of the witness to the question as contained in his deposition was: "Yes, such a delay as you speak of depreciated the market value of said cattle for the reasons given and on account of the decline in the market from 40 to 50 cents per hundred pounds?" The

appellant objected to this answer on the ground that the estimate of the damage contemplated a direct trip from Sherman on to Chicago, which was not within the contemplation of the contract of shipment, which objection was sustained by the court by eliminating a portion of the sentence, and permitting the balance to be read to the jury as follows: "And on account of the decline in the market from 40 to 50 cents per hundred pounds." The appellant objected and excepted to the action of the court in permitting the answer to go to the jury in its partial and garbled form.

The proposition submitted is that "the testimony of a witness should not be admitted in a partial form, so that without its connection it conveys a different meaning to the jury from that expressed by the witness."

When the testimony was admitted the court stated in the presence of the jury, "I understand that portion of the deposition, as here used, is for the purpose of showing a decline in the market at that time, and for that purpose it is admissible." There was other evidence showing a decline in the market, which was uncontradicted, and the court instructed the jury to the effect that defendant would not be responsible for any loss in the Chicago market by reason of the cattle not arriving in time for the morning market instead of at noon on December 15. If it can be said it was error to admit said testimony, under the circumstances, it is not probable that any injury resulted therefrom to appellant, but we are not prepared to say that there was error.

Appellant complains of the ruling of the court in not permitting appellee's witness, W. S. Mahar to answer the following question: "If the stenographer's report of your testimony on the former trial shows that you testified to no delays between Poplar Bluff and De Soto on the former trial of the case, would you stand corrected in your testimony?" and presents the following proposition: "On cross-examination it is permissible to show by a witness that he had testified differently on a former occasion and that his former testimony was correct." The witness had previously stated that on the former trial he had said there was no delay between Poplar Bluff and De Soto, which is a contradiction in his evidence. The bill of exception does not show what his answer would have been as to whether the former or last statement was correct, and we are therefore unable to say that appellant was injured by the court's ruling and the assignment is overruled.

The assignment that the court erred in allowing appellee's counsel to propound leading questions to witness Mahar, regarding his knowledge as to the market price of cattle at the National Stock Yards on December 12, 1902, will not be sustained. There is no particular question pointed out by the bill of exception as leading. By reference to the record we find that a number of questions were asked that were probably endeavoring to get the witness to testify as to his knowledge of the market quotation of that date, and various objections by appellant's counsel, but when the record as to proceedings had in this matter is duly considered we do not think the court exceeded his discretion in the premises.

Witness Mahar was permitted, over appellant's objection, to testify that the general rule of railroads was to transport cattle as quickly as

possible. We see no error in this. We think such a rule commendable. Besides, it is the duty of railroads to expedite such shipments, and we are unable to see what injury resulted to appellant by the admission of said testimony.

The court did not err in not permitting witness Mahar to answer the question: "Do you say in this case that your shipment was not gotten over the road as soon as possible under the circumstances?" Such testimony was improper as it was the issue the jury were impaneled to determine, and witness' opinion on that matter was not legitimate.

Nor did the court err in permitting the witness Mahar to give his opinion as to what the cattle would have sold for on the market at East St. Louis on December 12, had they arrived there in time for that market. The witness had shown that he was an experienced cattle man, was familiar with this class of cattle and knew the market price on that date at East St. Louis.

It was not error for the court to allow witness Mahar to testify that on previous occasions he had made shipments of cattle over this same route and the time consumed was 36 hours. If there was any reason why the road did not make this trip within a reasonable time it should have shown it. It was a pertinent inquiry what a reasonable time was for making the trip.

The testimony of witness Mahar is to the effect that the shipment stopped at some station and he went to the office of the company and inquired for the agent, and a party said: "I am the agent, what will you have?" He then complained of the delay, and was told that he could get out as soon as possible, but the passenger train was coming and he had to wait until the passenger train came in. The objection to the detailing of this conversation is that to bind the principal by the statements and declarations of an agent his authority must be shown. We accept this as a correct proposition of law, but whether or not the agent was authorized to make such statements their admission was harmless, as the train was delayed, as shown by Mahar, until the passenger train came in.

The twelfth, thirteenth, fourteenth and fifteenth assignments relate to the admission of testimony to the effect that extra expense was caused by the delay for feed between East St. Louis and Chicago and at Chicago. And also relate to the charge of the court on this subject. The contention is that there was no proof that said expenses were reasonable or necessary. There was no error in allowing the testimony and it was sufficient to authorize the court's charge to the jury for their consideration. (Gulf, C. & S. F. Ry. Co. v. Hume, 87 Texas, 221.)

The evidence showing that Mahar was an experienced cattleman, having engaged in shipping cattle to St. Louis and Chicago for years, it was not error to allow him to testify as to his opinion what loss in weight the said steers would suffer by reason of the delay in St. Louis and shipping them to Chicago. Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 104.

No injury resulted to appellant by the admission of the testimony of Eaton as to the weight of the cattle sold by him in Chicago. He saw the cattle go on the scales to be weighed, and a few minutes after received the official weighmaster's certificate of the weights which were

accepted as the basis of settlement in accordance with the sale he had previously negotiated, and before testifying he had refreshed his memory as to weights by examining the original official sale tickets made at the time of sale in the regular course of business, which tickets were beyond the jurisdiction of the court. The evidence was admissible to show how much was received for the cattle. Besides, the official weighmaster, Kinzie, who weighed the cattle, testified to these weights and there was no contradictory testimony. (Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 104; Missouri, K. & T. Ry. Co. v. Dilworth, 67 S. W. Rep., 88.)

The court in the third paragraph of its charge used the following language: "So, of course, if you should believe from the evidence that the defendant did exercise ordinary care to transport said cattle from Texarkana to the city of St. Louis, without unreasonable delay; or if you believe from the evidence that plaintiff sold his said cattle for as much as he would have sold the same for had there been no delay, if you find that there was an unusual delay in the said transportation of said cattle, you will find for the defendant."

The court in the first and second paragraphs just preceding this paragraph had instructed the jury plaintiff's theory, and if they so found to find for plaintiff, and then followed with paragraph three, here complained of. Appellant's contention is that: "The court, in stating the defendant's theory of defense in the case, should not state the same in such a manner as to convey to the jury that the court does not consider the defendant's position as of equal weight with the position of plaintiff in the case." In argument counsel insists that by the use of the term "of course" the court indicated to the jury in a disparaging way the defense of defendant as embodied in said paragraph. We do not assent to this view. If judgment had gone against plaintiff he could as well have contended that the expression "of course" was emphasizing the defense to his detriment.

Paragraph six of the court's charge reads: "It was the duty of the defendant not to keep plaintiff's cattle confined in its cars for a longer period than 28 consecutive hours, without unloading the same for rest and watering and feeding and to allow them to remain so unloaded for a period of at least five consecutive hours. So, you can not charge against the defendant any delay in the transportation of plaintiff's cattle that may have been caused by a compliance by the defendant with this duty. But if you believe from the evidence that the defendant delayed the transportation of plaintiff's cattle for a longer period than was reasonably required to unload said cattle, allow them five hours for rest, feed and water and to reload them; and that such delay over and above such period was unreasonable under the circumstances, then the defendant would not be justifiable in so delaying the transportation of said cattle." Appellant complains of the latter part of said charge as an instruction, "that as a matter of law the company should not permit them to remain in the pens when unloaded for a longer period than five hours." This construction of the charge we do not believe is warranted. The charge distinctly says that to justify the defendant in the delay over and above the period of five hours it must be reasonable under the circumstances. This we understand is what the law

requires of the defendant, that is to not unreasonably delay the ship-
ment of cattle.

The following paragraph of the court's charge is assigned as error:
"You are further instructed in this connection that any delay in the
transportation of plaintiff's cattle on account of the defendant's regular
train for an unreasonable length of time would not be justifiable without
some reasonable explanation for the same." The contention is that
it is on the weight of the evidence and emphasizes certain facts. Under
the circumstances of this case we do not think this charge reversible error.
The proof shows that the cattle were unreasonably delayed at Little
Rock over the five hours allowed for feed and rest and the excuse offered
by the railway company was that there was no regular train going out
and that the cattle were kept waiting for a train. There were fourteen
car loads of appellee's cattle. We think the charge under the facts
was proper.

Some of appellant's assignments complain of the court's charge relative
to the law as to the damage that resulted to the cattle in the reshipment
of the cattle from East St. Louis to Chicago. These charges conform
to the rules expressed by Justice Fisher in his opinion on a former
appeal of this case, 86 S. W. Rep., 939, which we think state the correct
principles.

The other assignments not discussed have been carefully considered
and in our opinion none show error.

The evidence shows unreasonable delay on the part of defendant in
transporting the cattle, and no reversible error having been committed
on the trial the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

Counsel for appellant in the motion for rehearing has called our at-
tention to an incorrect statement of fact in our opinion made by the
writer unintentionally in discussing the second assignment of error,
relating to the ruling of the trial court in not permitting the witness
Mahar to answer the question therein stated. It was stated in the
opinion that said "witness had previously stated that on the former
trial he had said there was no delay between Poplar Bluff and DeSoto."
This is incorrect. The fact is the witness had previously testified on the
last trial that on the former trial there had been a delay between Poplar
Bluff and DeSoto. But, notwithstanding this misconception of fact, we
are still of the opinion that the ruling of the court is not reversible
error. There is no evidence in the record referred to by counsel, or that
we have been able to find, that shows how he testified on a former trial,
except his own, which was that he had stated there was delay. It seems
to us immaterial how he answered the question propounded, whether in
the affirmative or in the negative, it would not have shown a discrepancy
in his statements. In the absence of testimony showing that his last
testimony was different from that on the former trial, we think the ex-
clusion of said testimony was harmless. Motion for rehearing overruled.

*Overruled.*

Writ of error refused.