St. Louis, Iron Mountain & Southern Railway Company v. W. A. Moon.

Decided June 29, 1907.

**1.—Carrier of Live Stock—Measure of Damage.**

In a suit for damages to a shipment of live stock, it appearing from the evidence that some depreciation in the value of live stock is naturally and necessarily caused by long shipments even when the carrier exercises due care, the omission of this element of damage from the charge upon the measure of damage, is reversible error.

**2.—Same—Contract of Shipment—Value—Limiting Liability.**

Contracts of shipment by carriers limiting the value of packages or freight and limiting the liability of the carrier in case of loss to some agreed value, may be valid in cases where the packages are sealed and the carrier has no opportunity to learn the value of the articles shipped; but the reason of the rule has no application in the case of a shipment of live stock, and such a contract in such a case is invalid.

**3.—Same—Lex Loci Contractus—Case Criticised.**

While it is true as a general rule that a contract valid in the State where made is to be deemed valid in every other State, this is not the case where such a contract is forbidden by expressed statute or some settled policy of the State where it is sought to be enforced. Hence a contract for the shipment of live stock made in the State of Arkansas and valid in that State whereby the common law liability of the carrier was limited, being contrary to the statutes of Texas, will not be enforced in Texas. The case of St. Louis, Iron Mountain & Southern Railway Company v. Hambrick, 97 S. W. Rep., 1073, criticised.

**4.—Shipping Contract—Limited Liability—Consideration.**

Where an intermediate carrier receives livestock from a connecting carrier, and without any reduction in the through rate of freight fixed by the initial carrier, and without opportunity to the shipper to consider and understand the terms of a new shipping contract, requires the shipper to execute such contract whereby the liability of the carrier is limited to the value of the stock at the time and place of shipment, not to exceed a stipulated amount per head, such contract, insofar as it attempts to limit the liability of the carrier, is invalid.

**5.—Carriers—Venue—Act Constitutional.**

The Act of March 13, 1905 (Gen. Laws, 1905, p. 29), regulating the venue of suits against railroads is not unconstitutional as being a discriminatory and unlawful impediment and burden upon interstate commerce.

Appeal from the County Court of Taylor County. Tried below before Hon. D. G. Hill.

*Leake & Henry,* for appellant.

*B. A. Cox,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellee against the Texas & Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company, the St. Louis & San Francisco Railway Company, and the Louisville & Nashville Railway Company, to recover damages to thirty-three head of horses and mules shipped by him over the lines of railway of the defendant companies from Merkel, Texas, to Talladega, Alabama. The trial resulted in a judgment for appellee against the appellant company for two hundred dollars, against the St. Louis & San Francisco Railway Company for one hundred dollars, against the Louisville & Nashville Railway Company for one hundred dollars, and in favor of the Texas & Pacific Railway Company. Appellant alone appeals.

We conclude that the judgment must be reversed because of error, as assigned, in the court's charge on the measure of damages. The charge on this subject is as follows: "If you should find for the plaintiff against all or either of the defendants, you will be governed by the following rule in arriving at your verdict: You will first find from the evidence the reasonable value of said stock in the market at Talladega, Ala., at the time they should have reached there without reference to any injury or damage sustained by said stock, if any. You will then find from the evidence the reasonable value of said stock in the market at Talladega at the time of their arrival in their damaged and injured condition, if you should find from the evidence they were injured and damaged in value, and if this last amount is less than the amount found under the preceding subdivision of this charge, this difference, if any, will be the amount of your verdict for the plaintiff."

It is plain that this charge required the jury to assess against the defendants damages for the depreciation and injury to appellee's horses and mules not occasioned by negligence. As shown in the testimony, some injury or depreciation in live stock is naturally and necessarily caused by long shipments, even when the carriers exercise due care and diligence in the transportation. For such injury or damages not occasioned by the carrier's negligence no recovery can be had. St. Louis S. W. Ry. v. Smith, 77 S. W. Rep., 28. Appellee seems to concede the error, but insists that it was cured by special charge number three requested by the appellant and given by the court. This special instruction, however, as we construe it, goes only to the issue of liability and not to the measure of damages. It was to the effect merely that before appellee would be entitled to damages in "any amount" the jury must find that his live stock had been injured or damaged "more than such a shipment would ordinarily be damaged as a result of being shipped from Merkel to Talladega."

There is yet another objection to the charge of the court we have quoted that requires notice. The evidence shows that appellant's line of railway is operated only from Texarkana, Arkansas, to Memphis, Tennessee, and that at Texarkana, within the State of Arkan-

sas, appellee entered into a separate contract for the continued carriage, limiting appellant's liability and containing the following special provision, which was pleaded in defense, viz.: "That in case of total loss of any of the live stock covered by this contract from any cause for which the first party will be liable, payment will be made therefore on the basis of the actual cash value at the time and place of shipment, but in no case to exceed $100 for each horse, pony, gelding, mare, or stallion, mule or jack; $50 for each ox, bull or steer; $10 for each calf or hog; $3 for each sheep or goat. In case of injury or partial loss, the amount of damage claimed shall not exceed the same proportions." It is insisted that by virtue of this provision of the contract the measure of damage as against appellant is to be determined by the market value of appellee's horses at the time and place of shipment, and not at Talladega, as directed in the court's charge.

The question of the validity of a contract so limiting a carrier's common law liability for injuries occasioned by its own negligence has often been considered by the courts and the conclusions reached are conflicting.  Southern Pacific Ry. Co. v. Maddox & Co., 75 Texas, 300; Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 104; St. Louis, A. & T. Ry. Co. v. Robbins, 14 S. W. Rep., 1075; Galveston, H. & S. A. Ry. Co. v. Febo, 8 Texas Ct. Rep., 629; Galveston, H. & S. A. Ry. Co. v. Ball, 80 Texas, 602; Grogan v. Adams Express Co., 60 Am. Rep., 360; Hart v. Pennsylvania Ry. Co., 112 U. S., 331, 28 Law ed., 717, and cases therein cited. The theory of the cases affirming the validity of such contracts, generally speaking, is that in express and other cases where packages are sealed, and in cases where the carrier has not the opportunity of fairly learning the value of articles shipped, it is reasonable that the carrier be accorded the right to agree with the shipper upon amounts beyond which it will not be liable, in order to protect itself against fanciful or extravagant values. It seems to us that this principle should not be applied in behalf of an intermediate carrier in any case where the property is wholly unconcealed and is shipped over several independent lines of railway upon a through freight rate and consists of a common merchantable article destined for sale on an open market and only having a well known and easily ascertained market value. But in the case before us appellant offered proof to the effect that such a contract was valid in the State of Arkansas, where the one under consideration was entered into, and, assuming such a contract to be valid in Arkansas, the Court of Civil Appeals for the Fifth District in the case of St. Louis I. M. & So. Ry. Co. v. Hambrick, 97 S. W. Rep., 1073, concluded that it must be enforced when presented for consideration in the courts of this State. It is doubtless true as a general rule that a contract shown to be valid in the State where made is to be deemed valid in every other State. But this rule must be accepted with the qualification that it be not forbidden by an express statute or by some settled policy of the State where it is sought to be enforced, and in view of our statute (Rev. Stat., art. 320) and decisions on the subject we are not inclined to agree with the decision in St. Louis, I. M. & So. Ry. Co. v. Hambrick, 97

S. W. Rep., 1073. We need not elaborate this question, however, as it may not become important upon another trial for, while the issue is not raised by appellee's pleadings, the evidence suggests that the initial carrier, the Texas & Pacific Railway Company, upon arrival in Texarkana forthwith delivered appellee's horses and mules to appellant for continued transportation; that appellant, as was its duty to do as a common carrier, accepted the same with said purpose; that appellee thereafter executed the contract in question with appellant, without any reduction of the through freight rate agreed upon with the initial carrier, and without opportunity for a fair consideration of the provision in question. Even the cases upholding contracts of the kind under consideration proceed upon the theory that to be valid the contract must have been fairly entered into with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, and if it should appear upon another trial by proper pleading and proof that the circumstances attending the execution of the contract were as suggested, the special provision in that event should undoubtedly be condemned.

The remaining assignments need but brief notice. We entirely agree with the conclusion reached in the case of St. Louis S. W. Ry. Co. of Texas v. Wester, 96 S. W. Rep., 769, to the effect that the Act of the Legislature of the State of Texas, approved March 13, 1905 (Gen. Laws of 1905, p. 29, c. 25) regulating the venue of suits against common carriers, is not repugnant to constitutional provisions and invalid on the ground, as appellant urges, that it is a "discriminatory and unlawful impediment and burden upon interstate commerce." While appellant is a foreign corporation whose line of railway is operated without this State, it nevertheless had an agent within this State, as provided in the Act of the Legislature named, and the court therefore properly overruled appellant's plea of privilege asserting its right to be sued in Dallas County. The court's charge defining negligence we think substantially correct, or at least, if not in approved form, the objection thereto was entirely cured by appellant's special charge number three, which was given by the court.

For the error in the charge of the court upon the measure of damages, the judgment as to appellant is reversed and the cause remanded for a new trial, but in other respects and as to other parties the judgment is not disturbed.

*Reversed and remanded.*