GALVESTON, H. & S. A. RY. CO. v. BUCK et al.   (No. 6316.)

(Court of Civil Appeals of Texas. Austin. March 16, 1921. Rehearing Denied May 18, 1921.)

1. **Carriers** ☞230(3)—**Unreasonable delay in unloading cattle held for jury.**

Unreasonable delay in unloading the cattle at the point of destination *held* for the jury.

2. **Carriers** ☞230(3)—**Whether carrier should have notified shipper of cattle of probable delay in unloading at destination held for jury.**

In stock shipper's action against railway for damages to cattle shipped, whether the railway in the exercise of ordinary care should have given the shipper information as to the probable congestion and inability to handle the cattle promptly at the point of destination, upon which he might not have made the shipment at all, or might have unloaded his cattle in transit for food and water, *held* for the jury.

3. **Carriers** ☞228(1)—**Carrier has burden of pleading and proving validity of excuse for delay.**

Where the shipper proves an unreasonable delay, resulting in loss or injury to his property, which the carrier seeks to excuse by showing the existence of unusual conditions, it must assume the burden of pleading and proving the validity of the excuse.

4. **Carriers** ☞215(1)—**Conditions will not excuse loss from delay, where shipper could have been, but was not, notified thereof.**

Where by the exercise of ordinary care by the carrier notice could have been brought home to the shipper of unusual conditions making loss from delay probable, thereby affording the shipper an opportunity to protect himself by not shipping at all or by otherwise dealing with such conditions, the existence of the conditions constitutes no defense to the carrier for the delay, where no such notice has been given.

**5. Carriers ⚌227(3)—Shipper's negligence in not looking after cattle held not pleaded.**

The issue of failure of the caretakers to properly look after cattle shipped was not raised where, though the railway pleaded specially the stipulations of the shipping contract obligating the shipper to attend and take care of his cattle, there was no allegation of breach of this condition, nor any charge of contributory negligence in this respect.

**6. Carriers ⚌230(12)—Special charge relieving carrier of cattle from liability for loss caused by their impoverished condition held properly refused.**

In shipper's action for damages to cattle shipped, where the railway's right to have the jury exclude from the amount of damages found the usual and ordinary losses from shipment or those resulting from the condition of the cattle was safeguarded by the general charge, the carrier was not entitled further to a specific instruction, which required the jury to find no damages whatever if they should believe that the injuries to the cattle were caused in part by impoverished condition of the cattle, unless they could separate such damages from those accruing from the negligence of the carrier; for in such a case the jury were not required to be able to "separate" damages caused by negligence from those resulting from other causes, as that term would ordinarily be understood by a jury, so that the requested instruction was incorrect and misleading.

**7. Carriers ⚌215(1) — Liable for negligent loss, though cattle in bad condition.**

A carrier is not relieved from liability for loss to cattle shipped caused by negligence or unreasonable delay by the fact that their impoverished or bad condition may have contributed to their death or injury, but, if guilty of negligence or unreasonable delay which proximately resulted in injury, the carrier is liable, though the results may have been more disastrous than would have been the case had the cattle been in good condition.

Appeal from District Court, Crockett County; James Cornell, Judge.

Action by Austin M. Buck against the Galveston, Harrisburg & San Antonio Railway Company and another. Judgment for plaintiff against the named defendant only, and it appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, H. S. Garrett, of Cisco, and W. B. Garrett, of Austin, for appellant.

Chas. E. Davidson, of Ozona, and Blanks, Collins & Jackson, of San Angelo, for appellees.

### Findings of Fact.

BRADY, J. Defendant in error sued plaintiff in error for damages arising out of a shipment of live stock from Barnhart, Tex., to Sanderson, Tex. The Kansas City, Mexican & Orient Railway Company of Texas, over which line the shipment moved in part, was also made a party defendant. The grounds for recovery were, substantially, negligent delays in the transportation, rough handling, and leaving the cattle in the cars at Sanderson, a station on the Galveston, Harrisburg & San Antonio line, for too long a time.

The defenses of the Orient railroad need not be stated, as there was a verdict in its favor.

The plaintiff in error specially pleaded a terrible drought in the country where said cattle had been ranged, and their weak and impoverished condition. This company also pleaded the stipulations of the contract under which the live stock was shipped, and that the delay in unloading the cars at Sanderson was not due to any negligence by the railway company, but to an extraordinary congestion of its cars at that point, due to an unusually heavy movement of troop trains and trains carrying war munitions and materials, to which business the company was required to give preferred attention under the laws of Congress, the regulations of the War Department, and the war policy of the United States.

Upon special issues submitted, the jury found the Orient not guilty of negligence, and with respect to the plaintiff in error made substantially these findings: That the plaintiff's cattle were damaged as the proximate result of its negligence in failing to exercise ordinary care in handling the cattle, and in causing them to be confined in the cars for too long a time without being unloaded for feed, rest, and water; some of the cattle being merely injured and some dying as the proximate result of such negligence. The answers of the jury also found the amount of the damages, for which judgment was rendered against plaintiff in error, less a certain deduction not necessary to state. The evidence was conflicting upon these issues, and therefore we adopt the jury's findings.

Any additional facts and evidence pertinent to the issues on this appeal will be stated in the opinion.

### Opinion.

There are a number of assignments of error, but only the principal questions raised will be discussed.

[1] It is claimed that the court should have granted the request for a peremptory instruction for plaintiff in error, upon the ground that the uncontroverted evidence showed that there were no unusual delays in the transportation or in the handling of the cattle, and that the long delay in holding them in the cars at Sanderson was not actionable negligence, because the railway company was required to give preferred attention to the handling of the trains carrying troops and war supplies through Sanderson that night. The claim goes to the extent that the undisputed evidence shows that the cars could

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

not have been spotted at the pens for unloading sooner than was done without violating the duty the company owed to the government, and without infringing the laws and military policy of the nation, including the betrayal of the secrets of the War Department. If this were true, of course, this court would not hesitate to set aside the judgment, and, the cause being fully developed, to hold the railway company not liable.

The contention here made requires a brief discussion of the evidence. We lay to one side the question of any negligence shown as to delays in transit, or improper handling of the live stock.

Upon the issue of unreasonable delay in unloading the cattle at Sanderson, it was shown that the shipment reached that point about 10 o'clock on the night of December 9th, after the cattle had been in the cars about 34 hours. They were not spotted at the pens for unloading until 7 o'clock the next morning. There was evidence that there was a heavy movement of troop trains and supply trains that night into and through Sanderson; and there is no dispute as to the preferential duty owing by the railway company in the handling of this business for the government. However, it was shown from the train dispatcher's sheet that there was a train in and through Sanderson approximately every hour from 10 to 12:40 on that night, but no train between the latter time and 2:40 a. m., or between 4:35 and 7:50 a. m. The conductor testified that when the cattle, were delivered at the Sanderson yards they lacked two hours of having been on the cars 36 hours, and the yardmaster at Sanderson testified that the holding of cattle on cars for more than 36 hours would have a bad effect on them. The yardmaster also testified that when the cattle arrived he asked the conductor if the 36 hours, allowed under the federal law, had expired, and was told by the conductor that it did not expire until about 9 or 10 o'clock the next morning; that, if he had known the cattle had been on the cars almost 36 hours, he would have instructed the conductor to take them to the stockyards and unload them. The agent at Sanderson testified that it would only take about 15 or 20 minutes to back the cattle down from the yards and put them on the unloading switch. The undisputed evidence showed that the stockyards were on a side track, not more than from about a half to three-fourths of a mile from the station. Without further recital of the evidence, we think the above is sufficient to show that the question was one for the jury.

[2] As to the contention of the railway company that its employés could not have given the shipper notice of the congested condition at Sanderson, through the movement of trains carrying troops and war supplies, without betraying the secrets of the government, it is sufficient to say that, giving the fullest scope possible for the necessity of keeping the movement of such trains secret, the company could have advised the shipper of the probable congestion and inability to handle the cattle promptly at Sanderson without revealing any of the secrets of the government. It could have advised this fact and made no reference to the time of the arrival, departure, or destination of soldiers or supplies, nor any of the other related matters of military policy. We cannot see why it was necessary to give information upon any of these matters, in order to inform the shipper of a situation which would preclude prompt attention to his shipment. In these circumstances, it was for the jury to say whether or not the railway company, in the exercise of ordinary care, should have given him the needed information upon which he might not have made the shipment at all, or might have unloaded his cattle in transit for feed and water, at other points on the line. We have concluded that the evidence is, at least, conflicting upon these matters, and that they were proper questions for the determination of the jury. Therefore all assignments raising these points are overruled.

We do not think there is any merit in the point that there was no competent and sufficient evidence of damages to the cattle, showing any proper measure of damages; neither do we agree with the claim that the witnesses did not show themselves qualified to testify as to the value and injuries of the cattle. There was sufficient evidence to support the jury's findings upon all these issues. The objections to the qualifications of the witnesses were matters primarily for the discretion of the trial court. We are unable to say that there was such gross abuse of that discretion as to constitute reversible error.

The objection to the opinions of certain witnesses in relation to this matter is not tenable. They did not, as in the Roberts Case, 101 Tex. 420, 108 S. W. 808, cited by counsel, involve a mixed question of law and fact, and invade the province of the jury. It would not be profitable to discuss the question further, but we cite the following cases as showing the extent to which testimony of this character has been admitted and sustained: Railway Co. v. Woods, 31 S. W. 237; Railway Co. v. Nowaski, 48 Tex. Civ. App. 144, 106 S. W. 437; Railway Co. v. Gunter, 44 Tex. Civ. App. 480, 99 S. W. 152; Railway Co. v. Dodson, 97 S. W. 523; Railway Co. v. Greathouse, 82 Tex. 109, 17 S. W. 834; Railway Co. v. Botts, 70 S. W. 113; Railway Co. v. Jones, 118 S. W. 759; Railway Co. v. Stanley, 89 Tex. 42, 33 S. W. 109; Railway Co. v. Moon, 47 Tex. Civ. App. 209, 103 S. W. 1176; Railway Co. v. Smith, 33 Tex. Civ. App. 520, 77 S. W. 28; Railway Co. v. Halsell, 35

Tex. Civ. App. 126, 80 S. W. 140; True Bros. v. Railway Co., 143 S. W. 298; and Railway Co. v. Warner, 42 Tex. Civ. App. 280, 93 S. W. 491.

[3, 4] It is also urged that while the trial court gave a special instruction, at the request of plaintiff in error, as to the defense that the delay at Sanderson was due to the preference required to be given government business, this defense was unduly restricted by a supplemental charge, authorizing the jury to disregard it as a complete defense, if the jury should find that the railway company, in the exercise of ordinary care, should have notified plaintiff of its inability to unload his cattle at Sanderson in proper time. Under the doctrine now well settled in this state, we think this point is lacking in merit. It is the rule that where the shipper proves an unreasonable delay, resulting in loss or injury to his property, which the carrier seeks to excuse by showing the existence of unusual conditions, it must assume the burden of pleading and proving the validity of its excuse. Where notice could have been brought home to the shipper of the conditions, by the exercise of ordinary care, the existence of those conditions constitutes no defense, when there has been a failure to give such notice. Railway Co. v. Grain Co., 103 Tex. 542, 131 S. W. 410; Railway Co. v. Word, 159 S. W. 375; Railway Co. v. Montgomery, 141 S. W. 813; Railway Co. v. Brooks, 145 S. W. 649; Railway Co. v. Dunford, 152 S. W. 1129; Railway Co. v. Drahn, 157 S. W. 282; Railway Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1150.

There are assignments complaining of the refusal of the trial court to give certain special instructions, requested by plaintiff in error. We will consider these questions with full recognition of the rule laid down in Railway v. McGlamory, 89 Tex. 635, 35 S. W. 1058, and Railway v. Rogers, 91 Tex. 58, 40 S. W. 956.

[5] As to the instructions relating to the failure of the caretakers to properly look after the cattle, this issue was not raised by either pleadings or evidence. It is true that the railway company pleaded specially the stipulations of the shipping contract, obligating the shipper to attend and take care of his cattle. There is no allegation of a breach of this obligation, nor any charge of contributory negligence in this respect. Not only so, but we do not think the evidence substantially raises any such issue. Therefore there was no error in refusing the special instructions.

[6] There was also a request for a specific instruction upon the issue as to whether or not the damages were caused by the thin condition of the cattle, and the natural and ordinary loss resulting from their shipment, in the usual and ordinary manner of handling same. The pleading was sufficient to raise this issue, but the court, in connection with the questions relating to the cattle killed and injured, as to both instructed the jury to exclude "from your computation of such damages the usual and ordinary losses, if any, as you find from the evidence would be usually and naturally incident to such cattle as are involved in this suit, in the numbers and over the lines and distances shown." Notwithstanding this instruction in the general charge, under the rule we have conceded the railway company would probably have been entitled to a specific instruction applying the law to the very facts relied upon as constituting that defense, if a proper and legal charge had been asked. The Supreme Court, while recognizing the right of specific instructions presenting the facts claimed to constitute a cause of action or defense, yet held that this legal right must be claimed at the peril of the party invoking it, and that the charge asked must be correct. In our opinion, the requested instruction was not a correct one. In part, it was upon the weight of the evidence. It is also argumentative and misleading. It required the jury to find no damages whatever, if they should believe that the injuries to the cattle were caused in part by the impoverished condition of the cattle, unless they could separate such damages from those accruing from the negligence of the carrier. In a case of this character, we think the jury were entitled to estimate the damages caused by negligence, and were not required to be able to "separate" them from those resulting from other causes, as that term would ordinarily be understood by a jury. The railway company's right to have the jury exclude, from the amount of damages found, the usual and ordinary losses, or those resulting from the condition of the cattle, was safeguarded by the charge of the court. It was not entitled further to a specific instruction, unless presenting a valid and correct charge.

[7] Furthermore, we think the charge as drawn was substantially violative of the rule stated in Railway Co. v. Dawson, 34 Tex. Civ. App. 240, 78 S. W. 235, and also recognized in Railway v. Alexander, 36 Tex. Civ. App. 297, 81 S. W. 1015, which we regard as a correct rule of law. This rule, quoted from the first case cited, is as follows:

"But this charge, we think, was properly rejected. It was to the effect that, if the condition of the cattle 'contributed to their death or injury,' such damages so occasioned should be excluded. Whatever the condition of the cattle, appellants, having received them therefor, were in duty bound to exercise ordinary care, and to transport them with reasonable dispatch, and, if guilty of negligence or of unreasonable delay which proximately resulted in injury, they are liable, although the results may have been more disastrous than would have been had the cattle been in good condition."

Complaint is made that the court permitted plaintiff's counsel to make an improper argument relating to the conduct of the yardmaster on the occasion in question. We agree with counsel that part of this argument was improper. It is believed, however, that it was not so prejudicial as to require a reversal of this case. There is nothing in the amount of the verdict, nor otherwise, to show that the jury were moved to return answers, which proved favorable to the plaintiff, through passion or prejudice. This matter falls within the rule announced in the following authorities: I. & G. N. R. R. Co. v. Irvine, 64 Tex. 529; Railway Co. v. Williams, 160 S. W. 643; and Railway Co. v. Green, 141 S. W. 345.

We have given careful consideration to all assignments, but believe no reversible error has been shown.

The judgment will be affirmed.

## On Rehearing.

While we have decided to overrule the motion for rehearing, there are certain points of attack upon our opinion which we wish to briefly discuss.

We stated that there was no train between 12:40 a. m. and 2:40 a. m., and no train between 4:35 and 7:50 a. m. It is urged that this finding is in conflict with the undisputed evidence, especially with the train sheet, which was introduced in evidence and not controverted. We have examined this document again, and do not agree that it shows the arrival of troop trains or government supply trains during the intervals mentioned. Furthermore, while there was testimony by the railway employés to the effect that their entire time was taken up with government business from the arrival of the cattle in question until the unloading of the same, there is ample room in the evidence to raise an issue in this respect. Not only were the employés interested witnesses, and the jury privileged to disbelieve their testimony on this point, in the light of the other evidence, but there were other facts upon which the jury were entitled to conclude that the cattle could have been unloaded many hours before they were placed at the unloading switch. As heretofore pointed out, the yardmaster testified that if he had known the cattle had been in the cars almost 36 hours upon their arrival at Sanderson, he would have instructed the conductor to take them to the stockyards and unload them. This alone we think made the issue one for the jury. However, that is not all. The agent at Sanderson testified that the cars containing the cattle could have been taken from the yards and placed at the unloading switch in about 15 or 20 minutes, and the stockyards were not more than about a half to three-fourths of a mile from the station. Furthermore, Emmit Buck testified that immediately upon arrival of the cattle at Sanderson he asked the yardmaster to place the cars for unloading immediately, and that the employé promised to do so in a few minutes; that throughout the night he several times made a similar request, and was promised that the cattle would be unloaded at a certain time ahead, but that this was not done. He also testified that the yardmaster did not appear to be busy. We have no doubt that these facts were sufficient to take the question to the jury.

It is also urged that our holding is in conflict with the case of Railway v. Daggett, 87 Tex. 322, 28 S. W. 525, a decision by the Supreme Court. The point here specifically made is that we erred in holding that the special issue, presenting the defense that the caretakers were negligent in not attending to and looking after the stock, was properly refused, because there was no pleading to support it. An examination of the case cited discloses that it is not in conflict with our ruling, for the reason that it was there specially pleaded by the railway company that the injuries to the cattle resulted from the negligence of the plaintiff in deserting the cattle and refusing to give them proper attention. This was, in effect, specifically pleading a breach of the contract. In the present case there was no such pleading.

We have carefully examined the answer of the railway company, and find that, while they specifically pleaded the stipulations of the contract, there was no allegation that plaintiff or his caretakers had failed to properly look after and attend to the stock. The only attempt to make this plea, suggested in the motion for rehearing, is in paragraph 7 of the answer. The default of negligence there complained of, however, was not the failure of plaintiff or his caretakers to look after the stock, or to give them attention while in the cars, but is restricted to alleged delay and negligence on their part in unloading the stock at Sanderson. It is clear from the undisputed evidence that the shipper could not possibly have been at fault in this respect, because he could not unload his stock until the cars were placed at the unloading switch. The averment is that if any delay occurred in unloading the stock at Sanderson, it was not due to any default or negligence of defendant, but resulted from the negligent failure of plaintiff to unload his stock with reasonable promptness and to properly comply with his contract and said rule of the Railroad Commission. The Commission rule referred to was one which made it the duty of the shipper to load and unload his live stock. As pleaded, it had no relation to the failure of plaintiff to look after his stock in any other respect. It is

clear, we think, that even as against a general demurrer, the allegation cannot fairly be construed to be a claim that the plaintiff was in default or was negligent in failing to look after or attend to his stock, except as to alleged delay in unloading his stock. The language, "the negligent failure of plaintiff to unload his stock with reasonable promptness, and to properly comply with his contract and said rule of the Railroad Commission," is qualified by what precedes it, and cannot be said to be a pleading that the plaintiff had failed to comply with his contract in any other respect except as to delay in unloading. For these reasons, we adhere to the conclusion that plaintiff was not entitled to the special instruction requested upon this issue.

In the opinion we also stated that there was no evidence raising this issue. A more careful consideration of the statement of facts convinces us that in this we were in error. The evidence, while meager, embraces testimony which tended to show that plaintiff or his caretakers were negligent in not lessening the damages by giving proper attention to the cattle while in the cars at Sanderson. However, as we have held there was no pleading to support this defense, the evidence would be unavailing to plaintiff in error.

Since the submission of the motion for rehearing, counsel for appellant has called our attention to two cases, which it is claimed are in conflict with our conclusion: Railway v. Harrington, 209 S. W. 685, and Hines v. Wards, 228 S. W. 1117. We have read both of these cases carefully.

As to the first, the Court of Civil Appeals merely held, as had been previously decided by the Supreme Court in several cases, that where there is a general plea of contributory negligence it is sufficient, in the absence of general demurrer, to authorize testimony in support of the plea, and will entitle the defendant to a specific submission of the defense. Our opinion does not militate in the least against this doctrine. The distinguishing feature is that in the Harrington Case there was expressly involved a general plea of contributory negligence, whereas in the present case no such plea is to be found. We have examined the answer again very carefully, and the only claim of negligence on the part of the plaintiff is his alleged delay in unloading the cattle from the cars.

With reference to the other case cited, it would appear to support the appellant's contention that some of the questions and answers of some of the witnesses here were violative of the rule announced by the Supreme Court in the Roberts Case, 101 Tex. 420, 108 S. W. 808. However, in the absence of a more complete statement of the testimony of the witness in the case of Hines v. Wards, it is an unsafe conclusion to say that the decision is directly in point. We have given this question renewed consideration, and adhere to the conclusion that the testimony complained of in the present case is not in conflict with the rule announced in the Roberts Case. When the entire testimony of these witnesses is considered, it is clear to our minds that they did not testify to either legal conclusions or upon mixed questions of law and fact.

In addition to authorities cited in the original opinion, we refer to the following: Railway Co. v. West, 149 S. W. 207, a decision by this court; and to the dissenting opinions of Chief Justice Conner, in Railway Co. v. McIntyre, 152 S. W. 1105; and Railway v. Gatewood, 185 S. W. 936.

It is not thought necessary to discuss any other questions. The motion has been given due consideration, but we believe it should be overruled, which is accordingly done.