Fort Worth & Denver City Railway Company
v. J. P. Daggett.

No. 220.

### 1. Negligence—Duty of Owner—Measure of Damages.

The general rule is, that where one is injured by the negligence of another the person injured must use all reasonable means at his command to avert or lessen the damages which would otherwise result from such negligence, and his failure to do so will limit his recovery to such damages as would have resulted from such negligence had such means been used, plus a sum as would reasonably have been expended in the use of such means ........ 337

### 2. Same—Contributory Negligence.

The failure to use such means would be contributory negligence, but only as to such portion of injury and resulting damages as would have been averted

by the use thereof, less the reasonable cost of such means, and could only prevent a recovery to that extent......... ........................... 328

**3. Same—Excuse for Want of Care.**

If it reasonably appears that the cost of such means, added to the damages which would not probably be averted thereby, would equal or exceed the damages which could reasonably be expected to result from the negligent act, then the injured party would be excused from the use of such means, and could recover the entire damages resulting from such negligent act... 328

**4. Duty by Owner of Injured Property.**

It·is not the negligence of the carrier, but the extent of the injury that might reasonably be expected to flow therefrom, and the expense likely to be incurred in an attempt to avert loss, which must be looked to in determining whether a shipper in case of a railway wreck and delay incident and injury resulting to live stock shipped had the right to rescind the contract of shipment and to refuse to feed and water the stock as he had agreed to do. See facts held not to relieve a shipper from the duty of caring for his stock although delayed by wreck..............·................................ 328

**5. Negligence.**

Where there was slight delay of a train carrying live stock, and where but little injury could have resulted merely from the delay, it was negligence in the shipper for his agent in charge of the live stock to refuse to feed and water the stock when facilities therefor were furnished by the railway company, and the wants of the cattle demanded such attention. Failure to afford such facilities is negligence on part of the railway......... ....... 328

**6. Feeding and Watering Live Stock.**

A special contract by which the shipper assumes the duty of feeding and watering the stock relieves the carrier from such duty; and the shipper is bound to such duty when reasonable facilities therefor are furnished by the carrier. This duty is imposed upon the shipper under Act of Congress. Rev. Stats. U. S., sec. 4387......................................... 329

**7. Agent in Charge of Stock.**

The abandonment of charge of live stock by the agent of the shipper does not impose the burden of such care upon the carrier to the extent of relieving the shipper of his duty to care for his stock under his shipping contract. His failure to provide for the care of the stock is negligence on his part.... 329

**8. Evidence of Negligence.**

There being evidence of delay and of the intermingling of the cattle so as to destroy the grading for the market which had been made in the shipment, the defendant was not entitled to judgment, although its liability for the greater amount of damages claimed was negatived on the ground of want of care on part of the plaintiff. The plaintiff is entitled to recover for loss the result of the negligence of the defendant .......................... 329

**9. Injuries Beyond its Line—Limited Damages.**

A shipping contract which exempts a carrier "from liability of every kind after said stock has left its road," does not relieve against the results arising from negligent acts upon its own line, although such damage developed or became apparent after the stock left its line........................... 330

ERROR to Court of Civil Appeals for Second District, in an appeal from Wichita County.

*Stanley, Spoontz & Meek* and *Carrigan & Hughes*, for plaintiff in error.—
By the shipping contract the plaintiff released the defendant from
liability for all loss or injury not occasioned by negligence. Hence
plaintiff can only recover for injury caused by the negligent acts of
the defendant. But certainly in this case the plaintiff is in no atti-
tude to complain of the defendant's negligence. Should we admit that
the delay at Wichita Falls was negligence of the defendant, the delay
in this case produced no injury. There is no evidence of any decline
in the market during the time of the delay there. There is no evidence
that the market was any lower when the cattle arrived at Chicago than
it was on the day they could have arrived there with the utmost dis-
patch. But it is only contended, that it made the time so long between
Wichita Falls and Texarkana that the cattle suffered for want of feed and
water. This consequence of the delay might have been easily avoided
by the slightest care on the part of the plaintiff; that is, by feeding and
watering them at Wichita Falls or Fort Worth. The plaintiff's agent,
C. B. Daggett, who was also part owner of the cattle, was travelling on
same train with the cattle to Chicago. He was there for the purpose of
feeding and watering. He assumed that duty by contract. He told
the conductor in charge of defendant's train that he did not wish to
feed and water at Fort Worth, but would go on to Texarkana. By the
plaintiff's own acts and directions the cattle were kept on the cars for
at least thirty-six hours after they arrived at Fort Worth, without
either feed or water, by reason of which they were damaged. No per-
son can recover for any injury to which he has himself contributed by
his own want of ordinary care, or for an injury caused by the defend-
ant's negligence, if under the circumstances he might have avoided
the consequences of the defendant's negligence, but failed to do so.
Much less can he recover for an injury which was occasioned by his
own negligence. We submit that this case ought to be reversed and
judgment rendered for the defendant. Cool. on Torts, 674; Thomp.
on Neg., 1151, 1152; 1 Sedg. on Dam., 201; Seale v. Railway, 65 Texas,
274; Brandon v. Manufacturing Co., 51 Texas, 121; Railway v. Adams,
78 Texas, 372; Railway v. Baird, 75 Texas, 256; Hunter v. Railway,
76 Texas, 195; 3 Am. and Eng. Encyc. of Law, 1416; 19 S. W. Rep.,
557, and authorities.

*C. L. Cummings*, for plaintiff in error.—1. If a shipper accompanies
and undertakes to feed live stock, the common carrier must furnish
him with necessary and proper places and opportunities for the pur-
pose. 4 C. C., sec. 240, p. 408, citing on pages 410, 411, and 412, the
following: Railway v. Maddox, 75 Texas, 300; Railway v. Pratt, 15
Ill. App., 177; Clark v. Railway, 14 N. Y., 571; Porterfield v. Hum-
phries, 8 Hump., 497; Dunn v. Railway, 68 Mo., 268: Hutch. on Carr.,
secs. 248, 260, note 1.

2. To avoid liability, the carrier must show that the loss was not caused by one of the excepted agencies (the acts of God or the public enemy), and must rebut the presumption of negligence. Ryan & Co. v. Railway, 65 Texas, 18–20; 2 Greenl. on Ev., sec. 219.

3. A carrier can not contract against its own negligence, and the accident of the kind on appellant's road is negligence per se. Railway v. Greathouse, 4 C. C., sec. 241, page 411; Rev. Stats., art. 278; 1 C. C., sec. 994, citing Story on Con., sec. 15.

4. Deviation of contract by carrier renders it responsible. Laws on Carr., sec. 139, mid. page 191, sec. 148.

5. A carrier can not stipulate against its own negligence, no matter what degree that negligence may be. 1 C. C., secs. 774–1257; 2 C. C. 193.

Where a carrier refuses to perform its contract it forfeits the right of the contract, and becomes liable the same as if there were none. 2 Pars. on Con., 675; 1 C. C., 195; Bish. on Con., sec. 677; 21 Am. and Eng. Encyc. of Law, 56.

6. Had appellee's agent, C. B. Daggett, acceded to the request of appellant to take charge of the cattle after deviation and mixing and placing them beyond the reach of food and water, it would have been accord and a waiver. Laws on Carr., sec. 95, p. 97; 2 Pars. on Con., 681.

Where the damage had its inception on the line of appellant, but did not develop until afterwards, it is inherent and relates back to the original source, and binds appellant because it is inherent and inseparable, and of such a nature that it can not be traced to any but appellant as the original cause.

DENMAN, Associate Justice.—Plaintiff, J. P. Daggett, sued the Wichita Valley Railway Company and the Fort Worth & Denver City Railway Company, on their common law liability as common carriers, to recover damages resulting to plaintiff on a shipment of 259 head of beeves, from Dundee, Archer County, Texas, to Chicago, Ill., by reason (1) of delay in shipment, the market being alleged to have declined during the delay; (2) of mixing the cattle, which had been classified for market; and (3) of failure to feed and water the cattle during transit.

Defendants pleaded that the cattle were shipped under a special contract whereby plaintiff (1) released the carriers from any damage resulting from delay, and (2) agreed at his own risk to feed and water, load and unload, the cattle wherever they should be unloaded and reloaded for any purpose, during transit.

Defendants also pleaded, among other things, that the injuries to the cattle resulted from the negligence of plaintiff and his employes in deserting the cattle and refusing to give them proper attention.

The case was tried before the court without a jury.

C. B. Daggett testified for plaintiff, that as an employe of plaintiff he graded, and loaded accordingly, said cattle on the Wichita Valley Railway, between 8 and 9 o'clock p. m., July 23, 1891; and thereupon, in company with "another hand," boarded the train to go with said cattle to Chicago for the purpose of taking care of them during transit. That when he reached Wichita Falls, about 10 o'clock that night, he learned of a wreck ahead on the Fort Worth & Denver City Railway, and that the cattle would be detained sometime thereby; and thereupon he and the "other hand" left the cattle and did not see them any more until next morning, when he learned that they had been mixed in the pen in unloading them during the night. That he did not feed or water, nor suggest that the cattle needed feed or water, while they were at Wichita Falls, although he said they could have been watered there by driving to a tank near the pen or to the river. That the agent of the Fort Worth & Denver City Railway Company on that day at Wichita Falls requested him to assist in regrading and loading the cattle, which he refused to do, for the reason that it could not be done in the stock pens, and he did not know all the brands. That about 6 o'clock in the evening of July 24th, the cattle having been loaded, started on the Fort Worth & Denver City Railway to Fort Worth, and that he and the "other hand" went with the cattle, arriving at Fort Worth about 2 o'clock next morning, where they remained about two or three hours, and left about 6 or 7 o'clock on the Texas & Pacific Railway for Texarkana, a distance of about 253 miles, at which place they arrived on the evening of the next day, July 25th, where the cattle were fed and watered for the first time since they were shipped at Dundee on the evening of July 23rd.

This witness further testified, "that he owned an interest in said cattle," but did not state the extent of such interest, and "that he went from Wichita Falls to Chicago as agent of defendant, at the request of the defendant." That while at Wichita Falls, and at two or three places between Wichita Falls and Fort Worth, the cattle could have been watered on the cars, but he did not water them nor ask that it be done, because he did not think they needed it, and thought they would do very well without food or water until they reached Texarkana. That at Fort Worth there were ample facilities for feeding and watering the stock, both in the stockyards of the Fort Worth & Denver City Railway Company and in those of the Texas & Pacific Railway Company, but that he neither watered and fed the stock there nor requested that it be done, because he thought it was not necessary, and that they would make it all right to Texarkana, where he expected to feed and water them; but that when he arrived in Texarkana and found the cattle much damaged and some of them dead for want of feed and water, he "found that he was mistaken in thinking that they could make it to Texarkana all right without feed or water." No one

does or could deny that the cattle were greatly damaged by the cruel treatment detailed above.

The court below rendered judgment for plaintiff for such a sum as to show conclusively that it included all damage done to the cattle between Dundee and Texarkana.

The Court of Civil Appeals, Head, J., dissenting, affirmed the judgment upon the ground (1) that the delay at Wichita Falls was occasioned by the negligence of the Fort Worth & Denver City Railway, defendant, in permitting a collision between one of its trains and a bull; (2) that such negligent delay, in law, conferred upon C. B. Daggett, agent of plaintiff, the right to rescind the special contract under which the cattle were shipped; (3) that C. B. Daggett did, at Wichita Falls, rescind said contract, and that thereby plaintiff was relieved of the duty imposed upon him by the contract of feeding and watering the cattle; (4) that upon the rescission of the contract the common law duty of feeding and watering the cattle devolved upon defendant; (5) that C. B. Daggett proceeded with the cattle from Wichita Falls as the agent of defendants, and not of plaintiff; and that therefore his negligence in failing to feed and water was the negligence of defendants. This is an analysis of the opinion as we understand it.

The record shows that this was an interstate shipment, and that by the terms of the shipment it was understood between plaintiff and defendants that plaintiff would send some one with the cattle to attend to feeding and watering, loading and unloading, during the trip; and to such shipment we will confine our remarks. The assignments of error are sufficient to question the correctness of each of the grounds above stated as the basis of the opinion of the Court of Civil Appeals, and we will discuss them in this order.

We can not say as a matter of law that there was no evidence to support the finding that the delay at Wichita Falls was negligence on part of the Fort Worth & Denver City Railway. The very fact of stopping and unloading after the cattle had only been on the train about two hours was some evidence of negligence; the long delay was evidence of negligence, and so was the fact that the company's agents allowed the train to collide with a bull. This court does not pass upon the sufficiency of evidence.

Assuming that defendants were guilty of negligence in unloading or delaying at Wichita Falls, does it follow that plaintiff had the right, by reason thereof, to rescind the special contract of shipment without reference to the quantum of injury inflicted upon the cattle by such negligence? The general rule is, that where one is injured by the negligence of another, the person injured must use all reasonable means at his command to avert or lessen the damage which would otherwise result from such negligence, and his failure to do so will limit his recovery to such damages as would have resulted from such

negligence had such means been used, plus such a sum as would reasonably have been expended in the use of such means. The failure to use such means would be contributory negligence only as to such portion of the injury and resulting damages as would have been averted by the use thereof, less the reasonable cost of such means, and therefore could only prevent a recovery to that extent. This rule of law does not, however, require the injured party to do a vain thing in attempting to avert the consequence of the negligent act of another. Therefore, if it reasonably appears that the reasonable cost of such means, added to the damages which would not probably be averted by the use thereof, would equal or exceed the damages which could reasonably be expected to result from the negligent act, then the party whose property has been or is threatened to be injured by such negligent act would be excused from the use of such means, and could recover the entire damage resulting from such negligent act; and if the property were destroyed or rendered valueless thereby, could abandon the same and recover the full value thereof.

It results from the above that it is not the negligence of the carrier, but the extent of the injury that might have been reasonably expected to flow therefrom, and the amount of expense which might have been reasonably expected to be incurred in the attempt to avert same, which must be looked to in determining whether the shipper in this case had the right to rescind the contract of shipment and refuse to feed and water the stock, as he had agreed to do, on account of the negligent delay at Wichita Falls. It appears from the record, that if the cattle had been properly fed and watered at Wichita Falls or even at Fort Worth, the damages would have been to a great extent averted; in fact it does not appear therefrom that any serious damage would have resulted from the delay if the cattle had been properly fed and watered at either or both of said places. We are therefore of opinion that the trial court and Court of Civil Appeals erred in holding that such delay at Wichita Falls in law justified plaintiff's agent, C. B. Daggett, in rescinding the contract under which the cattle were shipped.

We are further of the opinion, that said courts erred in holding that by such delay and attempted rescission plaintiff was relieved of the duty of feeding and watering the stock, because the attempted rescission was ineffectual, and left the contract in full force, and because the Act of Congress, independent of any contract, imposed upon the person in charge of the stock the duty of feeding and watering same, of which duty he could not divest himself under the circumstances detailed in his testimony above, and his failure to perform such duty, when reasonable facilities were furnished by the carrier, was negligence chargeable to his principal. Rev. Stats. U. S., sec. 4387.

We are further of opinion, that the special contract, as well as said Act of Congress, relieved the carrier of the duty, in the first instance,

of feeding and watering at such points as it furnished reasonable facilities to the shipper to do so, but that in the absence of such facilities at any point the contract would be unreasonable as to such point, and the carrier would be liable for any damage resulting from the failure to feed and water at such point.

We are further of the opinion that C. B. Daggett continued throughout the agent of plaintiff, and that his negligence was chargeable to plaintiff. If, however, it be conceded that C. B. Daggett abandoned the cattle and the service of plaintiff J. P. Daggett at Wichita Falls and was no longer his agent, but became the agent of the carrier, then plaintiff J. P. Daggett was guilty of negligence in failing to make any arrangement to perform the duty of feeding and watering as required of him, both by the special contract and the statute above cited. While the agent C. B. Daggett might abandon the service of his master, he was powerless to relieve him of the duty imposed by the contract and the law. The failure to perform this duty was negligence. It can avail him nothing to show that the carrier was also guilty of negligence. We are of the opinion that there was error in holding that J. P. Daggett was not guilty of negligence in failing to feed and water the cattle at such places as the carrier provided reasonable facilities.

Under our view of the law of the case, it is not necessary for us to express an opinion as to whether C. B. Daggett could in any event be relieved of the effect of his negligence as far as he was interested in the cattle, and whether as to such interest the plaintiff J. P. Daggett was placed in any better position by virtue of the agreement that plaintiff is entitled to recover for whatever damages defendants are liable.

We can not assent to the proposition urged by appellant, that the judgment should be here rendered for it upon the ground that there is no evidence of negligence on its part, or if there is, then plaintiff was guilty of contributory negligence.

If the total damage resulted from different injuries, produced by separate and distinct causes, some of which were the negligent acts of plaintiff alone or of plaintiff and defendants combined, but some were the negligent acts of defendants or either of them, without contributory negligence on the part of plaintiff or his agent, then, for the damage reasonably resulting from the latter class of causes, plaintiff should recover under the principles herein discussed.

If the delay on appellant's road resulted solely from its own negligence, as we think the court below was authorized to find, then plaintiff was entitled to recover for such damage as he suffered by reason of any decline in the market price between the time the cattle should have and did reach the point of destination; and also for any damage to the cattle which would have resulted from such delay, even if they had been properly fed and watered; and if appellant failed to provide

reasonable facilities for feeding and watering at Wichita Falls, and plaintiff and his agents could not by the use of reasonable means have fed and watered at that place, then plaintiff is also entitled to recover for such damage as resulted to the cattle from want of feed and water at that point, and which could not have been prevented by properly feeding and watering by plaintiff as soon as the cattle reached a place where it could have reasonably been done. While the contract exempts appellant "from liability of every kind after said live stock shall have left its road," nevertheless if the injury were inflicted on appellant's line, under circumstances rendering it liable to plaintiff under the principles above stated, plaintiff would be entitled to recover all damages reasonably flowing therefrom and which he could not have averted under the principles above stated, even though such damage developed, or became apparent, after leaving appellant's line. If plaintiff's agent under all the circumstances was not guilty of negligence in failing to be present when the cattle were unloaded and the grades mixed at Wichita Falls, and the selling price was diminished by such mixing of grades, then plaintiff can recover such portion of the damage resulting therefrom which could not reasonably have been averted by regrading the cattle. We can not say as a matter of law that no damage would have resulted to the cattle by regrading them in the pens.

The judgment is reversed and the cause is remanded, for the errors above indicated.

*Reversed and remanded.*

Delivered November 26, 1894.