GAINES v. BROWN.   (No. 787.)†

(Court of Civil Appeals of Texas.   Amarillo.
May 8, 1915.   Rehearing Denied
June 5, 1915.)

1. BILLS AND NOTES ⊙527—ACTIONS—EVI-
DENCE—SUFFICIENCY.

In a suit on a note, evidence *held* to show
that it was not intended that the notes which
were given to secure a guaranty should be dis-
charged when the guaranty was discharged.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1847–1855; Dec. Dig. ⊙
527.]

2. BILLS AND NOTES ⊙537—JURY QUESTION
—DIRECTION OF VERDICT.

In a suit on a note, where there was no
sworn pleading attacking the validity of the
assignment, and the evidence clearly showed
that the note was in force, it is proper to di-
rect a verdict for plaintiff.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. ⊙
537.]

Appeal from District Court, Dawson Coun-
ty; W. R. Spencer, Judge.

Action by C. E. Brown against W. E.
Gaines. From a judgment for plaintiff, de-
fendant appeals. Affirmed.

C. D. Russell and Mathes & Williams, all
of Plainview, for appellant.   Ferguson &
Puckett, of Lubbock, and G. E. Lockhart, of
Tahoka, for appellee.

HALL, J.   Plaintiff, Brown, sued appel-
lant upon a promissory note, dated July 3,
1911, executed by defendant, payable to J.
F. Barron, R. E. Simpson, and Mit Aikin,
October 1, 1911, in the sum of $1,842, provid-
ing for interest from maturity at 10 per cent.
and 10 per cent. attorney's fees.

The defendant answered that he, together
with 28 other citizens of Dawson county, ex-
ecuted what is termed a guaranty contract,
in the sum of $50,000, for the purpose of se-
curing the construction of a railroad into
said county. By said contract they agreed to
pay T. J. O'Donnell the said sum upon the
completion by the Santa Fé Railway Com-
pany of a railway into the town of Lamesa;
that at the same time, for the purpose of
securing the performance of said contract,
the defendant and a large number of other
persons executed their respective notes, pay-
able to the said O'Donnell, and that the note
sued upon was the amount due from him
upon said guaranty contract, as between him-
self and the other guarantors; that, in ac-
cordance with the understanding and agree-
ment of all parties at the time said notes
were executed, this note, together with all
others, was by said O'Donnell delivered to
the said Barron, Simpson, and Aikin, for the
purpose of collection, the proceeds thereof to
be applied to the payment of said guaranty
contract; that the note sued upon is simply
a renewal of an original note so made by de-
fendant and executed for the purposes above
set out; that on July 25, 1909, the said

O'Donnell transferred and assigned the guar-
anty contract to the Pecos & Northern Texas
Railway Company; that on or about the 15th
day of November, 1912, the guaranty contract
was settled and discharged, and the guaran-
tors released by said railway company, while
said note was still in the hands of said orig-
inal payees, Barron, Simpson, and Aikin;
that after January 1, 1913, Simpson, Barron,
and Aikin, without authority or consent of
defendant, indorsed said note on the back
thereof and delivered it to O'Donnell; that
the same has, by some means unknown to
defendant, come into the possession of plain-
tiff; that said three committeemen or rep-
resentatives had no right and no authority as
to this defendant to transfer said note.

By supplemental petition plaintiff admitted
that the payees in said note held it as trus-
tees; that defendant, with 28 other citizens,
had guaranteed to O'Donnell the payment of
$50,000, and that O'Donnell had transferred
all of said obligations, including the guaranty
obligation, to the Pecos & Northern Texas
Railway Company, and that said company
had instituted suit against the makers of said
guaranty obligation in the district court of
Dawson county to recover the amount there-
of; that O'Donnell had instituted suit in the
district court of Nolan county for a sum
claimed to be due him from said railroad
company, and that it was agreed by all the
parties to said contracts that all of the notes
and obligations held by said guaranty com-
mittee to pay the sum guaranteed should be
transferred to said O'Donnell in settlement
of the claim he made against said railroad
company, and that such agreement was final-
ly consummated.

[1] It appears from the evidence that ap-
pellee, with several other signers of the guar-
anty contract, appeared in Sweetwater No-
vember 15, 1912, and executed a contract in
triplicate, signed by Barron, Aikin, and Simp-
son, as a committee representing the various
subscribers to the guaranty contract, by the
attorneys of the Pecos & Northern Texas
Railway Company, by the attorney for the
defendants in the suit filed by the Pecos &
Northern Texas Railway Company against
appellee and his co-obligors on the guaranty
contract, and by several of the guarantors
themselves, including appellant. By this con-
tract it was stipulated that the suit between
the Pecos & Northern Texas Railway Com-
pany and Barron; No. 109, then pending on
the docket of the district court of Dawson
county, to recover upon the guaranty con-
tract, should be dismissed. It is recited that,
in consideration of the adverse conditions
which had confronted the people of Dawson
county for the last few years, and on account
of a desire upon the part of said railway
company to aid and assist the people of Daw-
son county, the plaintiff in that suit agreed
to dismiss the same, and that the guaranty
contract should be surrendered to the obligors

† Writ of error pending in Supreme Court.

and canceled; that the guarantors should pay the costs of court. It was further stipulated in said agreement that in the suit filed by O'Donnell against the Pecos & Northern Texas Railway Company, then pending in the district court of Nolan county, the defendants would procure judgment to be rendered in said cause in favor of the Pecos & Northern Texas Railway Company, and would indemnify the Pecos & Northern Texas Railway Company against any liability whatever by reason of said suit.

At the March term, 1913, of the district court of Dawson county this agreement was made the judgment in said cause, thereby dismissing the suit against appellant and all his co-obligors. There appears in the statement of facts the following transfer, dated Sweetwater, Tex., November 15, 1912:

"This is to certify that for a valuable consideration I have this day sold and assigned to E. Q. Daniel all the bonus notes this day received from Mit Aikin, J. F. Barron, and R. E. Simpson, acting as a committee of citizens of Dawson for the bonus subscription to the Pecos & Northern Texas Railway Company. This contract is based on a certain contract this day entered into by and between T. J. O'Donnell and Mit Aikin, J. F. Barron, and R. E. Simpson, in which a certain suit pending in the district court of Nolan county, Tex., is withdrawn by T. J. O'Donnell, wherein he is suing the Pecos & Northern Texas Railway Company of Texas for $25,000, and to which contract reference is here made, and which contract is hereby made a part hereof."

This is signed by T. J. O'Donnell.

The statement of facts contains a written transfer and assignment of all the unpaid promissory notes made by the citizens of Dawson county and appellant's note is shown to have been one of these. The transfer is signed by E. Q. Daniel August 22, 1913, and states that for value received said notes are transferred to said C. E. Brown.

The record further shows a contract made between O'Donnell, Aikin, Barron, and Simpson, dated Sweetwater, Tex., the 15th day of November, 1912, whereby O'Donnell, in consideration of the transfer to him by the guaranty committee of all promissory notes made by the guarantors, dismissed his action then pending in the district court of Nolan county against the Pecos & Northern Texas Railway Company: It was further stipulated in said agreement that, if each of the subscribers should make satisfactory arrangements with O'Donnell within 60 days from the date thereof to pay 50 per cent. of the amount of his subscription, he should be released for the balance; otherwise the said O'Donnell should have the same power as was vested in the committee to collect the full amount of each subscription.

Mit Aikin testified that appellant was at Sweetwater November 15, 1912, when the above-mentioned contracts were made; that the terms of the agreement were decided upon one night, and the contracts themselves drawn up the next morning. The witness further said:

"I would not be sure that Mr. Gaines was there, but think he was. He was there one or other of the meetings. I think both, but I won't be certain; I am not sure."

He further said the notes were transferred to O'Donnell in pursuance of the agreements had at Sweetwater; that Gaines was present when the contract signed by him was executed by all the parties; that the attorney for the Santa Fé Railway Company explained the contract to him.

Another witness testified that he held the note in suit, together with others, for collection after they were transferred to O'Donnell; that he talked with Gaines several times, but no arrangements were made about settling the note.

Appellee testified that he was at Sweetwater when the agreements above mentioned were executed; that he knew appellant, and knew he was there. After the introduction of this testimony plaintiff closed. The appellant did not take the stand, and introduced no evidence whatever; whereupon the court directed a verdict in favor of the plaintiff.

The agreements above mentioned show one transaction. The evidence of the witnesses is sufficient to establish the fact that Gaines was in Sweetwater on the day they were executed, and present at least at one of the meetings, where the matters were discussed, and tends strongly to show that he was present at both meetings. No one testified that Gaines was not present and did not have full knowledge of all that was done; nor did he raise any objection when the party holding his note for collection talked with him more than once about a settlement. The presumption arising from the failure of appellant to produce evidence showing his want of knowledge of all that was done, when taken in connection with the suspicion arising from the facts just stated, we think, warranted the court in directing a verdict against him. House v. Robertson, 89 Tex. 681, 36 S. W. 251; Ft. Worth, etc., Ry. Co. v. Daggett, 87 Tex. 322, 28 S. W. 525; Aldridge v. Pardee, 24 Tex. Civ. App. 254, 60 S. W. 789, writ of error denied by Supreme Court 94 Tex. 709, 60 S. W. 789; Chandler v. Meckling, 22 Tex. 36; Bailey v. Hicks, 16 Tex. 222.

[2] The uncontroverted evidence established the fact that the cancellation of the guaranty contract was not intended and did not cancel the note, and that the note was supported by sufficient consideration. The appellee produced a written transfer of the note, and no sworn pleading was filed attacking the validity of the assignment. There being no controverted issue to submit to the jury, the court did not err in directing the verdict.

The judgment is affirmed.