BAKER v. BROWN.    (No. 589.)

(Court of Civil Appeals of Texas.    El Paso.
May 25, 1916.)

1. BILLS AND NOTES ⌖182—TRANSFER—FIDUCIARY PAYEE.

The mere fact that the payee of a note is such in a fiduciary capacity does not incapacitate him to transfer it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 434–437; Dec. Dig. ⌖182.]

2. BILLS AND NOTES ⌖182—TRANSFER.

It is not essential to validity of transfer of a note by the payee that the maker agree to or direct the transfer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 434–437; Dec. Dig. ⌖182.]

3. BILLS AND NOTES ⌖518(1)—FAILURE OF CONSIDERATION—EVIDENCE.

The connection between a note and guaranty contract not being shown, it cannot, on evidence, at most merely raising a surmise, be held that the consideration of the note failed, defeating recovery thereon, on the cancellation of the contract.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1816, 1817, 1819, 1820; Dec. Dig. ⌖518(1).]

Appeal from District Court, Scurry County; Jno. B. Thomas, Judge.

Action by C. E. Brown against W. V. P. Baker. Judgment for plaintiff, and defendant appeals. Affirmed.

C. D. Russell and Mathes & Williams, all of Plainview, for appellant. Ferguson & Puckett, of Lubbock, and G. E. Lockhart, of Tahoka, for appellee.

HIGGINS, J. Brown sued Baker upon the latter's promissory note in sum of $550, payable to order of J. F. Barron, R. E. Simpson, and Mit Akin, due October 1, 1911. The payees indorsed the note without recourse and transferred and delivered the same to T. J. O'Donnell who, in turn, transferred it to one Daniel, and Daniel transferred it to Brown. The defendant answered that in the year 1909 O'Donnell was soliciting subscriptions to a bonus to be given to induce the construction of a branch of the Santa Fé Railway System to the town of Lamesa in Dawson county; that a guaranty contract had been given O'Donnell by various citizens, which guaranty reads:

"We, the undersigned citizens of Lamesa and Dawson county, Texas, for the purpose of assisting T. J. O'Donnell in securing a branch of the Santa Fé Railway System from some point on their main line now in course of construction from Texico to Coleman, to Lamesa in Dawson county, Texas, do each with the other agree and bind ourselves, and our heirs, executors, and administrators, to pay to T. J. O'Donnell or his assigns the sum of fifty thousand dollars in cash upon the completion of the above-named railroad to the town of Lamesa, Texas. We further agree and bind ourselves to deliver to the Santa Fé System or its allied lines a complete right of way, station grounds, and stock pen grounds whenever the same has been surveyed and adopted. If condemnation proceedings be necessary to acquire title to the right of way, the Santa Fé Railroad System will allow the use of their name to file suit, that the title to the right of way may be acquired, and we agree, jointly and severally, to indemnify the Santa Fé Railway Company against the cost of any such suit. It is further understood and agreed that in accepting this guaranty the Santa Fé Railway Company agrees and binds itself to build and place in operation a railroad to the town of Lamesa, Texas, on or before December 31st, 1910."

This guaranty was signed by the payees in the note and various others, but not by defendant. This instrument was transferred by O'Donnell to the Pecos & Northern Railway Company. Defendant further alleged that the note sued upon was given in renewal of notes which he had originally given in aid of the bonus and guaranty contract, and that said notes had been obtained by false and fraudulent representations made by O'Donnell. It was further alleged that the notes executed by defendant and others in aid of said bonus and guaranty contract were given to the payees named in the note for the purpose of collecting same and applying proceeds to the payment of the guaranty; that the payees were duly authorized to collect the notes and renew same and apply proceeds to the liquidation of the indebtedness evidenced by the guaranty contract, and that no other authority was possessed by them; that the guaranty contract had been settled and discharged and the guarantors released therefrom. Upon trial before a jury a peremptory instruction was given to find for the plaintiff, in accordance wherewith verdict was returned and judgment rendered.

The Pecos & Northern Texas Railway Company had filed suit in the district court of Dawson county against the signers of the guaranty contract to recover a balance of $36,000 due thereon. This suit was number 109, and on November 15, 1912, the parties thereto entered into a written agreement, the material portions of which are as follows:

"1. In consideration only of the adverse conditions which have confronted the people of Dawson county during the past few years, and

a desire upon the part of the plaintiff to aid and assist the said people of Dawson county and obligors on said original contract and others who may be indirectly obligated thereon to said obligors, defendants herein, the plaintiff agrees that the above-styled and numbered cause shall be dismissed, and that the original obligation executed, and which was the basis of this action, shall be surrendered to said obligors and canceled. Payments made to plaintiff not to be effected, being property of plaintiffs, nor one right of way provision of contract."

In accordance with this agreement, judgment was entered on March 18, 1913, as follows:

"In accordance with said agreement, it is ordered, adjudged and decreed that this cause be dismissed and that the obligation sued on by the plaintiff be canceled and declared of naught in so far as provided in the foregoing agreement and that said agreement be in all things the judgment of this court."

There was some kind of a suit pending in Nolan county by O'Donnell against the Pecos & Northern Texas Railway Company, and on November 15, 1912, an agreement was entered into with respect thereto by O'Donnell and the payees named in the note upon which the instant suit is based. This agreement reads:

"This agreement this day made by and between T. J. O'Donnell, of Nolan county, Texas, and the guaranty committee of Dawson county, Texas, by which guaranty committee is meant the persons in authority and authorized to act for each and every guarantor to the Pecos & Northern Texas Railway Company, under contract in suit in cause number 1102, styled T. J. O'Donnell v. Pecos & Northern Texas Railway Company, now pending in Nolan county Texas, that said O'Donnell is to dismiss said suit upon consideration that said committee will indorse over to the said O'Donnell without recourse on them, all instruments in writing evidencing a promise to pay any money or thing of value by said citizens to said committee, or to said T. J. O'Donnell. In other words, every subscriber thereto in any manner or form, and it is a part of the consideration for the dismissal of said suit, that said T. J. O'Donnell shall own and hold and possess every subscription made by every individual subscribing thereto directly or indirectly in said Dawson county, Texas, with no limitation whatever save and except that each subscriber if he makes satisfactory arrangements with the said T. J. O'Donnell within 60 days' time for the payment of fifty per cent. of his subscription now due, then and in the event, the said T. J. O'Donnell shall accept the said fifty per cent. of said subscription now due in payment thereof and shall receipt therefor. Otherwise the said T. J. O'Donnell shall have full power as this committee has to collect the full amount of the subscription of any individual that is now due, and the consideration moving these guarantors to make this contract is that, by virtue hereof, we save each subscriber one-half of his subscription, provided within 60 days he arranges payment of one-half thereof. Unless he so arranges with the said T. J. O'Donnell, it is expressly agreed and understood that he shall have and claim no rights under this contract. It being understood that this passes no rights to O'Donnell in the original contract executed to O'Donnell by guaranty committee."

On the same day (November 15, 1912) O'Donnell transferred to E. O. Daniel all bonus notes which he had received from said Akin, Barron, and Simpson. On August 22, 1913, Daniel transferred the notes to plaintiff Brown. On November 15, 1912, judgment was rendered in the suit of O'Donnell against the Pecos & Northern Texas Railway Company that O'Donnell take nothing. O'Donnell testified:

"I am the same T. J. O'Donnell mentioned in the pleadings in this case. I helped to get up the subscriptions for the bonus in Dawson county. I was also connected with getting up what is known as the 'guaranty contract.' It was gotten up after the notes were signed—on the day we finished getting up the bonus—some may have signed it before, but it was not delivered until then. I know about the settlement of these two suits. I was present at the time they were settled. They were all settled by one agreement, although there were two documents drawn up. The note sued on and the others were delivered to me at the settlement of the suit at Sweetwater; that is the contract for the delivery of them was delivered to me there. They were delivered to me about three days after, just as soon as we could get out to Lamesa. R. E. Simpson and Mr. Barron held possession of the notes at the time they were turned over to me. I afterwards transferred those notes to Mr. Daniel. That is the transfer which was offered in evidence. I know Mr. Daniel's handwriting (shown instrument). That is Mr. Daniel's handwriting. This note that is sued on here was never paid or canceled within my knowledge. It wasn't paid at the time I transferred it to Daniel nor at the time Mr. Daniel transferred it to Mr. Brown. It has not been paid up to this present date that I know of. This note was given for the purpose of getting the Santa Fé to build a line to Lamesa from their main line that they were building at that time. These notes were first gotten up to find out whether we could get up $50,000.00. They were first gotten up in my name and I transferred them to the committee and transferred the bonus contract to the Santa Fé. The guaranty contract was gotten up for the purpose of guarantying to the Santa Fé that it would get $50,000.00 for building the road."

Cross-examination:

"I authorized Mr. Simpson to transfer the notes at the time they turned over the guaranty contract for me to take to Chicago—gave them a power of attorney to sign the notes."

The foregoing is a statement of all the facts adduced in evidence upon the trial of this cause.

[1] Error is assigned to the giving of the peremptory instruction, and it is first contended that it was improper because Barron, Simpson, and Akin were holding the note as trustees without authority to sell or transfer the same. It is true they were trustees, but this fact alone did not incapacitate them from transferring the note, and in the facts we find nothing to so incapacitate them. We know of no rule of law which incapacitates the payee of a promissory note from transferring same simply because he was a payee in a fiduciary capacity.

[2] It is also suggested that the transfer of the note was made without any agreement or instruction from defendant so to do. It is not essential to the validity of a transfer of a promissory note by the payee thereof that its maker should agree to or direct such transfer. Neither was it necessary that the Pecos & Northern Texas Railway Company should consent to the transfer.

[3] It is also contended that the cancellation of the guaranty contract released the maker of the note from any obligation to pay the same. In other words, that the consideration of the note had failed. This question was passed upon in Gaines v. Brown, 177 S. W. 220, a companion case to this and decided adversely to appellant. In the case cited, the facts seem to have been fully developed, which is not the case here.

If the consideration of the note had failed, it was incumbent upon appellant to affirmatively show that fact. The cancellation of the guaranty contract would suggest that there had been a failure of consideration, but the connection between the note and guaranty contract is not shown, and the relationship and mutual obligations of the parties is not disclosed. The facts in the case are quite undeveloped, and this court is left to surmise to determine just what they are. We cannot hold that the consideration of the note had failed upon a surmise that such connection existed between the note and guaranty contract; that the cancellation of the guaranty contract would operate as a release of bonus notes given by various parties to the obligors in the guaranty contract. In the condition of the record here presented, it is not shown that the consideration of the note had failed. The evidence, at best, raises a mere surmise that there had been a failure of consideration. This being the case, error is not shown in the giving of the peremptory instruction. The views here expressed dispose of the various assignments.

No error being shown, the judgment is affirmed.