## PANHANDLE & S. F. RY. CO. v. GUTHRIE. (No. 2057.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 24, 1923. Rehearing Denied Feb. 21, 1923. Second Petition for Rehearing Denied March 7, 1923.)

1. **Carriers 207(1)—Two contracts on same shipment issued same day held to be construed together.**

Where plaintiff shipped an emigrant car outfit, containing goods, implements, and live stock, and received two contracts on the shipment issued on the same day, one referring to the live stock, the two should be considered together.

2. **Carriers 20(11)—Shipper must show established rate in suit for penalties and contracts were not evidence thereof, but showed intention to charge established rate.**

A shipper, suing a carrier for penalties under Rev. St. arts. 6559, 6669, for refusal to deliver freight and for extortion on shipment of goods and live stock on which two contracts were issued, was required to show what the established rate was, and the statement in the bill of lading was not evidence thereof, but the contracts were evidence of intention to charge regularly established rate; that for the live stock expressly reciting that the rate was subject to correction.

3. **Carriers 13(2)—Facts held not to show unjust discrimination in rates charged.**

Application of a 58½ cent rate to plaintiff's shipment and a 56½ cent rate to another car, and a demand for an additional payment on the weight shown on a scale bill attached to the waybill differing from the weight on which freight had been paid, *held* not to show unjust discrimination as defined by Rev. St. art. 6670, the higher rate being demanded on such other shipment after delivery.

4. **Carriers 211—Shipper, relying on contract and not treating holding of shipment for overcharge as conversion, held bound to continue to feed and water stock.**

Where a shipper continued to rely on his contract when the carrier stopped the shipment and wrongfully or erroneously demanded additional freight, instead of electing to treat such act as a conversion, his caretaker was bound to continue to feed and water the live stock pursuant to contract.

Appeal from Lubbock County Court; P. F. Brown, Judge.

Action by J. S. Guthrie against the Panhandle & Santa Fé Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, Wilson & Douglas, of Lubbock, and Terry Cavin & Mills, of Galveston, for appellant.

Vickers & Campbell, of Lubbock, for appellee.

BOYCE, J. Plaintiff made a shipment of an emigrant outfit car from Bells, Tex., on

the Texas & Pacific to Shallow Water, Tex., on the Panhandle & Santa Fé. The Texas & Pacific Railway Company issued two contracts, dated the same day, and both signed by the plaintiff and the railway company. One acknowledged receipt of the shipment for transportation between said two points, "subject to the classifications and tariffs in effect on the date of the issue of the original bill of lading," and contains the following:

"Description of Articles and Special Marks, e. o. f. H. H. Goods, Farm Imps. and Live Stock on Cars.

"Weight (subject to correction) 20,000; class or rate 56.5.

"If charges are to be prepaid, write or stamp here, 'To be prepaid.' Prepaid:

"Received $113.00
           3.39
           _____
           $116.39 apply on prepayment of charges on the property described herein."

The other contract referred to the 10 head of live stock in the car, and provided for transportation "at published tariff rates," and contained this provision:

"This contract is subject to correction as to rate, weight and classification so as to conform to the rates, rules and regulations legally applicable to the shipment."

On delivery to the Panhandle & Santa Fé Railway Company at Sweetwater another contract was made which provided for transportation by said railway company—

"at the rates and charges for which said live stock may be lawfully carried as fixed and determined by the established and published tariffs, classifications and rules of said party of the first part [the railway company], to which reference is here made."

[1, 2] The two contracts executed with the Texas & Pacific Railway Company respecting the same shipment should be considered together. It is evident that it was the intention to provide that shipment should be made under the regularly published and established rates—the live stock contract expressly provided that the rate was subject to correction. We think the plaintiff, before he would be entitled to recover the penalty provided by article 6559, would be required to show what the established rate was, and the statement of the rate in the bill of lading would not be evidence of such fact. Sabine & East Texas Railway Co. v. Cruse, 83 Tex. 460, 18 S. W. 755; G., C. & S. F. Ry. Co. v. Loonie, 84 Tex. 259, 19 S. W. 385; Wichita Valley Railway Co. v. Nance (Tex. Civ. App.) 25 S. W. 47. For this reason we overrule the appellee's cross-assignments.

[3] For the same reason we think there could be no recovery for extortion, as defined by article 6669, Revised Civil Statutes, on account of the application of the 58½-cent rate to this shipment, without showing the rate established by the Railroad Commission. We do not think the facts sufficient to show "unjust discrimination" as defined by article 6670, Revised Statutes, in the application of the 58½-cent rate to this shipment while applying a 56½-cent rate to the Stegall car. The evidence shows that the defendant did, after delivery, demand of Stegall payment of freight on the 58½-cent rate. The stopping of plaintiff's car at Lubbock was evidently caused by the showing made by the scale ticket attached to the waybill that the shipment weighed 28,800 pounds instead of 20,000 pounds, on which freight had been prepaid. So that the finding of discrimination and extortion was probably based on the fact of claim for payment of freight on this excess weight. On this issue the defendant was entitled to have submitted to the jury an inquiry to whether the overcharge "was unintentional and innocently made, through a mistake of fact."

[4] We think the court should have submitted issues as to the failure of plaintiff's caretaker to feed and water the stock at Lubbock, and whether the injury to the stock was due to such fact. We think this would be true, though the shipment was held at Lubbock in the assertion of the demand for more freight than was collectible. If such demand gave the plaintiff the right to treat the railway company as a converter of the property, he did not assert such right. He elected to treat the contract for transportation as still in force, and proceeded under it. He did not have the right to rescind in part. Fort Worth & Denver City Railway Co. v. Daggett, 87 Tex. 322, 28 S. W. 525. Having elected to have the contract further carried out, we think he is bound by the terms thereof binding him to feed and water the live stock.

Reversed and remanded.