## PANHANDLE & S. F. RY. CO. v. THOMPSON. (No. 2079.)

(Court of Civil Appeals of Texas. Amarillo. April 18, 1923.)

1. Carriers ⏥211—Refusal to give shipper opportunity to use facilities to feed and water cattle was failure to furnish them.

Under Rev. St. art. 714, requiring carrier to feed and water stock during transportation unless otherwise provided by special contract, in which case it is duty of the carrier to furnish facilities for feeding and watering, such facilities were not furnished if the carrier refused the shipper opportunity to use the facilities.

2. Carriers ⏥227(1)—Allegation of unreasonable delay by carrier of stock held to impute negligence.

Allegation by shipper of cattle that there was a long and unreasonable delay in the shipment by the carrier imputed negligence without a statement charging failure to use ordinary care.

3. Appeal and error ⏥1068(4)—Prayer to impose penalty on carrier, held harmless if penalty was not recovered.

In a shipper's action against a carrier, prayer to impose statutory penalty was harmless where it was not shown that plaintiff recovered the penalty or that the issue was submitted to the jury.

4. Carriers ⏥227(1)—Petition for injury to live stock from delay held sufficient as against special exception.

A petition by a shipper for injury to live stock was sufficient against special exception that it did not apprise defendant of nature of damages or elements thereof, and that plaintiff was required to plead the same with particularity where the petition alleged the injury to consist of delayed delivery and unreasonable confinement of the stock without food and water, and fixed damage at a specified sum measured by the difference between the value of the animals in the condition in which they arrived and the value in the condition in which they should have arrived.

5. Carriers ⏥228(5)—Evidence held to sustain verdict for damages for delay in shipment of live stock.

Evidence held to sustain verdict for damages for delay in shipment of live stock.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by J. D. Thompson against the Panhandle & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant.

W. H. Russell, of Hereford, for appellee.

KLETT, J. The appellant was the defendant in a suit brought by appellee to recover damages to a shipment of cattle. From a judgment rendered in favor of plaintiff for $1,398.10, the defendant has appealed. The plaintiff alleged that at 7 p. m. on November 26, 1920, defendant accepted from plaintiff, at Bovina, Tex., 341 head of cattle for transportation to Rankin, Tex; that said cattle reached destination at 9 a. m. November 29, 1920, and were retained on the cars during the trip without feed and water, although plaintiff made repeated requests that the cattle be unloaded for feed and water; that the shipment was delayed several hours between Canyon and Tulia on account of defect or incapacity of engine or of train being overloaded; that 28 to 36 hours is a reasonable time in which to transport said cattle and confine them on the train without feed or water, and that the time used was unreasonable; that, by reason of the delays stated and the defendant's refusal to unload for feed, rest, and water, the plaintiff suffered actual damages in the sum of $3,400, being the difference between the value of the cattle in the condition in which they arrived and the value in the condition in which they should have arrived. Plaintiff prayed for judgment for such damages, and also asked for the statutory penalty of $500. Defendant replied with general and special demurrers, general denial, and a special answer, alleging: (1) That the shipment was delivered by defendant to the Kansas City, Mexico & Orient Railway Company, the connecting carrier, at Sweetwater, and, under the shipping contract entered into between plaintiff and defendant at Bovina, it was stipulated that the defendant was only bound to deliver to the connecting carrier; (2) that in such shipping contract there was a special agreement on the part of the plaintiff and defendant that plaintiff would feed and water the stock and give defendant notice in writing of the places where shipper desired to unload for feed and water, that plaintiff was furnished with transportation and accompanied the ship-

ment, but made no request upon the defendant to unload for feed and water, that in fact plaintiff expressly requested that the cattle go through to destination without feed or water, although facilities for unloading, feeding, and watering would have been furnished plaintiff upon reasonable request, and that such failure upon the part of plaintiff was negligence and the direct and proximate cause of the injuries complained of; (3) that the damages, if any were suffered, were those ordinarily incident to a shipment of live stock, and were the result of inherent weakness and propensities of the cattle; (4) that the defendant exercised ordinary care, the answer specially controverting the plaintiff's allegations of negligence, and particularly alleging that "the movement of the train was greatly retarded by weather conditions," and "that the only delay was between Canyon, Tex., and Plainview, Tex., and this delay was not attributable to any negligence of the defendant in the operation of the train"; and (5) that the cattle were being shipped to pasture and soon recovered from their injuries after arrival at destination.

The cattle were loaded at Bovina at about 3:50 p. m. November 26, 1920, and left Bovina at 7:50 p. m. the same day. The train was set out at Canyon 4 hours and 40 minutes later. Canyon is 64 miles from Bovina. The conductor in charge of the train testified that the time ordinarily required to make the run would be from 2½ to 3 hours. Although the shipment arrived at Canyon at 12:30 a. m. November 27th, it did not leave Canyon, according to Conductor Ivey, until 5 a. m. November 27th, making a delay of 4 hours and 30 minutes at Canyon. This conductor came out of Amarillo with 28 cars of cattle received from the Ft. Worth & Denver City Railway Company, and destined to Midland. He picked up 34 cars at Canyon, including the plaintiff's 11 cars. Canyon is 122 miles from Slaton. The shipment arrived at Slaton at 6:50 p. m. the same day. The usual time for making the run from Canyon to Slaton is about 9 hours. Up to this point the defendant took about 24 hours to make a run of 166 miles. Between Canyon and Slaton the train encountered a high wind and had to be divided two or more times to pull grades. At one time the crew took only part of the train to the next station for fear of the engine running out of water. There was more or less question raised on the trial about the capacity of the prairie type of engine used to pull the tonnage. There was evidence that the cattle train could not keep out of the way of the local train leaving Amarillo for Slaton between 6 and 7 o'clock the same morning. Witness Hiner testified he heard the conductor say after leaving Canyon "that he had too much load; did not see why they wanted to put so much on him for." The shipment left Slaton at 7:55 p. m., and was turned over to the Orient at Sweetwater at 5:35 a. m. on November 28th. The distance between Slaton and Sweetwater is 104 miles. There is also testimony that there was delay in getting out of Sweetwater. At 11:30 p. m. November 28th the shipment reached Rankin, which is 179 miles from Sweetwater.

The cattle were not unloaded or given feed or water. Witnesses say that the cattle were badly drawn as a result of the treatment, and that two of them died while in charge of the defendant. Probably the most favorable testimony in behalf of plaintiff with reference to the defendant's refusal to unload is that given by the witness Heiner, who said:

"I heard Mr. Thompson [the plaintiff] say he thought the cattle had been on about long enough. I took it from what he said he was talking to the conductor. He said he thought his cattle had been on there long enough without feed and water, and he wanted them to have feed and water and rest. The conductor said the stock pens are not large enough; that he would have to put part in and take care of them and herd the rest around. He said he did not believe they would hold them all nohow, and they did not have any feed at the pens and would have to get somebody to haul some feed in to feed them. Mr. Thompson said if he could not do it he could not, but he would like to. These cattle were in good flesh, fat, and good stout cattle when they were loaded. I looked at these cattle in the cars at Sweetwater, and they were pretty badly drawn."

There was also other testimony given by the plaintiff and the witness Metcalf in line with the foregoing evidence. The shipping contract contained a stipulation to the effect:

"That, at shipper's expense, shipper will load the stock at the first-named station, take care of, feed, and water and attend to same while in the stock pens or railroad and while being transported, give carrier notice in writing of place or places where shipper wishes same unloaded for feed and water, and shall at shipper's expense and risk unload the stock if the place of destination be on railroad."

On arrival at Sweetwater a new shipping contract was entered into by the plaintiff with the Orient. The extent of the damage was testified to in part by plaintiff as follows:

"If these cattle had arrived at Rankin in the condition they were in at Hereford, normal shrinkage considered, they would have been worth $90. In the condition they did arrive they were worth $65."

It appears that some character of written request was made on the Orient to keep the cattle in the cars, but the instrument introduced in evidence is ambiguous in that it refers to "12 cattle, sheep, swine, or other animals." It seems to have been given by plaintiff under an agreement reached with the defendant that plaintiff would receive immediate connection with the Orient at Sweetwater. It is not clear that the instru-

ment was executed after the shipment was accepted by the Orient. Moreover, one of the defendant's witnesses testified that the Orient's facilities at Sweetwater for handling the shipment were inadequate owing to lack of pens.

[1] The appellant's first three propositions challenge the sufficiency of that part of the plaintiff's petition charging that the defendant refused to grant plaintiff's request that the cattle be unloaded for feed and water; and the eighth proposition insists that the pleadings and evidence did not authorize the trial court to submit the issue to the jury. Appellant cites article 714 of the Texas statutes making it the duty of the carrier to feed and water live stock during transportation, "unless otherwise provided by special contract," and, while admitting it was the duty of the carrier to furnish facilities, argues that under the law and facts stated it was necessary for plaintiff to "plead and prove that the facilities were not furnished him." We think the plaintiff's petition, though confessedly meager, substantially met the requirements of the rule contended for by the appellant. The special contract in this case made it the duty of the shipper to feed and water, but did not make it his duty to do the unloading. The plaintiff did not deny making the special contract, as evidenced by the bill of lading, or charge that the carrier did not have the facilities, but alleged, in effect, that the carrier refused to allow the plaintiff access to the facilities. It is stated in the petition, it is true, that the carrier failed to feed and water the stock, but it is also alleged that the carrier refused "to unload said cattle" for feed and water, although, the plaintiff avers, he "repeatedly requested" the defendant to do so. Even though the carrier had ample facilities, it became liable to the shipper, contract or no contract, if the carrier refused the shipper an opportunity to use such facilities. Therefore, in our opinion, "the facilities were not furnished," under the appellant's own theory, if the carrier refused to unload. Railway Co. v. West (Tex. Civ. App.) 149 S. W. 206; Railway Co. v. Montgomery (Tex. App.) 16 S. W. 178; Railway Co. v. Dunn (Tex. Civ. App.) 78 S. W. 1080; Railway Co. v. Daggett, 87 Tex. 322, 28 S. W. 525; 4 R. C. L. 980, 981, §§ 445, 446. In 2 Hutchinson on Carriers, §§ 640, 641, the rule here applied is aptly quoted as follows:

"But even though, by virtue of the contract under which the animals are carried, it is the duty of the shipper to attend the animals, provide for their wants, and protect them from injury to themselves, yet, if the carrier fails or refuses to furnish the shipper reasonable opportunities and facilities for performing the duties which he has undertaken, the carrier will be liable for the injury thereby sustained."

[2] It is urged under the fourth, fifth, and sixth propositions that the petition does not show actionable delay. We fail to find any statement in the petition charging that the defendant failed to use ordinary care, but it does assert that there was a long and unreasonable delay. We think such a statement imputes negligence. Railway Co. v. Gillett (Tex. Civ. App.) 99 S. W. 712; Railway Co. v. Daggett, 87 Tex. 322, 28 S. W. 527. In the Dagget Case the Supreme Court said that "the long delay was evidence of negligence."

[3] There is no merit, we think, in the twenty-seventh propositions, complaining of the action of the trial court in overruling the defendant's exception to that part of the prayer asking for the $500 statutory penalty. If there was error, it was harmless because it is not shown that the plaintiff recovered the penalty, or that the issue was submitted to the jury. Railway Co. v. Ryon (Tex. Civ. App.) 177 S. W. 525 (writ refused).

[4] The appellant specially excepted to the petition "because the defendant is not sufficiently apprised by said allegations as to the nature of said damages, or the elements thereof, and, as alleged, the damages are too general and indefinite, and the plaintiff should be required to plead the same with particularity." While we must admit that the plaintiff's petition is very brief, and that we have had considerable difficulty in deciding the question, nevertheless we have reached the conclusion that the trial court did not commit reversible error in overruling the special demurrer. If the nice distinctions between "damnum" and "injuria" are to be observed in pleading a cause of action based on tort, we believe an analysis of the petition shows the presence of the two elements. The injury is alleged to consist of the delayed delivery and unreasonable confinement of the stock without food or water; while the damage caused thereby, fixed at $3,400 is measured by the difference between the value of the animals in the condition in which they arrived and the value in the condition in which they should have arrived. 1 C. J. 964, § 56; 1 R. C. L. 319, § 5. It must be admitted, we think, that the petition is sufficient, as against a general demurrer, to sustain a recovery of nominal damages. And we also believe that under such allegations, governed by our liberal system of pleading, the plaintiff would be allowed to prove and entitled to recover general damages—that is, such damages as naturally and necessarily result from the injustice charged against the defendant. Townes on Pleading, 405 (2d Ed.); Glasscock v. Shell, 57 Tex. 215. Although there is not in the petition any specific designation of physical suffering or injury, we think that the general allegations already mentioned gave the defendant notice of the nature of plaintiff's claim and the character of proof to be offered for the reason that, under the rule prevailing in this state, "whatsoever the law infers from a

given state of facts, the adverse party is presumed to know, and must take notice of, whether it is specially pleaded or not." Railway Co. v. Curry, 64 Tex. 87. By common observation and experience, a person should know that in the operation of natural laws thirst, hunger, waste, and exhaustion would necessarily follow from the ill treatment complained of. The law presumes such damages, and they need not be specifically set forth. 17 C. J. 1001, § 305; 8 R. C. L. 430, § 7. Of course, if the plaintiff were seeking recovery of such damages as do not necessarily result from the wrong committed, then under the rule he would be required specially to plead them; i. e., if the shipper wished to show that he was injured by a decline in the market, such damage would not be a necessary result of the delay and would have to be alleged. And if the plaintiff in this case undertook to make proof of special damages, not covered by the petition, it was the duty of the defendant to prevent such proof by offering timely objection. It does not appear that the appellant has complained of the admissibility of any of the evidence. Hence we cannot say the appellant was prejudiced by the action of the court.

The rule we seek to invoke in this case is the one followed by the Supreme Court in Railway Co. v. Martin, 98 Tex. 322, 83 S. W. 675, wherein it was said:

" 'The general allegation of damages will suffice to let in proof and to warrant recovery of all such damages as naturally and necessarily result from the wrongful act complained of; the law implies such damage—that is, damages of that sort—and proof only is necessary to show the extent and amount. But where damages actually sustained do not necessarily result from the act complained of, and consequently are not implied by law, the plaintiff must state in his declaration the particular damage which he has sustained, for notice thereof to the defendant; otherwise the plaintiff will not be permitted to give evidence of it on the trial' [citing 3 Sutherland on Damages, 426]. The same rule is adopted by Mr. Sedgwick, who refers to the more enlarged and particular statement of the rule made by Mr. Chitty as the correct rule and exposition of the reasons on which it is based [citing 2 Sedgwick on Damages, 606]. This is a just rule of pleading; for it requires the person seeking relief, by his pleadings, to inform the adverse party of the facts upon which he intends to rely for a recovery, thereby avoiding surprise.' T. & P. Ry. Co. v. Curry, 64 Texas, 87; Campbell, Receiver, v. Cook, 86 Texas, 632 [26 S. W. 486, 40 Am. St. Rep. 878]. More especially applicable to this case is this rule: 'While it may be sufficient to specify the main fact, yet, if it is attempted to particularize the injuries arising from the principal one, all that it is designed to prove should be alleged.' 16 Enc. of Pl. & Prac. 380; Pinney v. Berry, 61 Mo. 365, 366; Smith v. McConathy, 11 Mo. 524; I. & G. N. Ry. Co. v. Beasley [Tex. Civ. App.] 29 S. W. 1121."

[5] The sufficiency of the evidence to support the verdict of the jury and the judgment of the court is vigorously attacked by the appellant. We have reviewed the evidence and consider it sufficient. While we think that there was evidence upon which the jury could have differed as to the conclusions to be drawn and the verdict to be returned, there is no ground for substituting our judgment for theirs in passing on the credibility of the witnesses and the weight to be given their testimony.

The judgment is affirmed.