GULF, C. & S. F. RY. CO. v. SAINT.
(No. 5939.)

(Court of Civil Appeals of Texas. Austin.
June 26, 1918.)

1. DEATH ⬤══75 — BENEFICIARIES — EVIDENCE.

In an action for death, brought by wife as administratrix and beneficiary, evidence *held* to sustain finding that husband and wife, though separated, had agreed to again assume marital relations.

2. DEATH ⬤══103(1) — BENEFICIARIES — SEPARATION OF HUSBAND AND WIFE.

That a wife is not living with her husband does not as a matter of law preclude her from recovering damages for his death, as there is probability of a reconciliation and her right of support.

3. DEATH ⬤══99(1)—WRONGFUL DEATH—EXCESSIVE DAMAGES.

Where the life expectancy of deceased was, as a fireman, at which occupation he was killed, 22.78 years, and his average earnings for the 4 years prior to his death were $51.50 per month, and proof showed that he was a negligent fireman, and not thrifty, a verdict of $7,000 is excessive by $3,000.

Appeal from District Court, Bell County; F. M. Spann, Judge.

Action by Mrs. Docie Saint, administratrix of the estate of Albert R. Saint, against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reformed and affirmed, on condition of remittitur.

W. W. Hair, of Temple, Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Smith, of Ft. Worth, for appellant. J. F. Hair, of San Antonio, A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for appellee.

Findings of Fact.

JENKINS, J. Appellee brought this suit to recover damages on account of the death of her husband, caused by the negligence of the appellant. The evidence establishes such negligence.

Albert R. Saint, deceased, and Docie Saint, appellee, were married in Williamson county, Tex., in December, 1904, where they resided for about 5 years, not altogether in harmony, but no serious trouble is shown between them. In 1909 Saint left, with the declared intention of finding another home for himself and wife. We infer that they were living with their mother-in-law. He went to Bartlett, a nearby town, sold some mortgaged property, and went to Oklahoma. From there he wrote to a friend to see his wife and ascertain if she would come to him. She did not do so. After remaining in Oklahoma a few months, he returned to Hill county, Tex., where he was arrested on an indictment charging him with disposing of mortgaged property. He was taken to Georgetown, where he remained in jail some 4 months. He was convicted and sent to the penitentiary. About 18 months afterwards he was pardoned. Soon after this he obtained employment as fireman for appellant, and continued in such employment until his death.

Deceased and appellee never lived together as man and wife after he left her to go to Bartlett. She never visited him while he was in jail. Soon after he was pardoned he wrote her a letter, professing great affection for her, and expressing a desire to again live with her. To this she did not reply. During the following 4 years she saw him only twice (until she went to the hospital), and then for only an hour or two at the time, at which times the subject of their again living together does not appear to have been discussed.

About three months before Saint's death, appellee was in the hospital at Temple for some 10 days, during which time Saint visited her several times. There is other evidence in the record which indicates to our minds that appellee had no affection for her husband, and never intended to live with him again, and that he had lost his desire to again live with her. During all the time that they thus lived apart, he contributed only $8 to her support, and this was long before his death. He never saw her after she left the hospital, and did not pay any part of her bill

there. Notwithstanding his name, she evidently thought that, like Jim Bledso, "he weren't no saint," and he seemed to have entertained the same opinion of her.

However, her testimony as to what passed between them at the hospital, together with the testimony of her brother-in-law as to what Saint said to him, is sufficient to sustain the finding of the jury that they intended to live together again as husband and wife, which is the effect of the verdict in her favor, and in deference to the verdict of the jury we feel constrained to find that such was the fact.

The life expectancy of deceased, not taking into consideration his occupation as a fireman, was 31.78 years. As a fireman, his expectancy was shown to be about 9 years less. His average earnings for the 4 years prior to his death were $51.50 per month. Appellee recovered a judgment for $7,000.

### Opinion.

[1, 2] The principal contentions of appellant are: (a) Appellee was not entitled to a judgment for any amount, for the reason the evidence shows that it was not probable that she and her deceased husband would ever live together again, and that she had no reasonable expectation of receiving any pecuniary aid from him had he lived; and (b) the judgment is excessive. For the reason, as stated in our findings of fact, that the evidence is sufficient to sustain the verdict of the jury in her favor on the issue as to the probability of their again living together, we overrule appellant's assignment of error in reference to this matter, including assignments as to refusal to give several special charges requested by appellant in relation thereto. The fact that a wife is not living with her husband does not, as a matter of law, preclude her from recovering damages for his death. The jury may take into consideration the probability of a reconciliation, as well as her right to be supported by him, in a proper case, and the probability of such support, and her community interest in any property that he may acquire, notwithstanding such separation. Railway Co. v. Bryant, 31 Tex. Civ. App. 483, 72 S. W. 886; Railway Co. v. Spicker, 61 Tex. 431, 48 Am. Rep. 297; Railway Co. v. Murray, 44 Tex. Civ. App. 480, 99 S. W. 152.

[3] We sustain appellant's assignment that the judgment is excessive. The evidence shows the present cash value of the sum of $50 per month during the life expectancy of deceased, if money is worth 8 per cent., is $6,169. It does not appear that the deceased had any property or money at the time of his death, from which we infer that he was not economical. But, even if he was, as his occupation as a fireman required him to be on the road most of the time, it is not probable that he would have saved more than $25 per month to contribute to his wife. There seems to have been no prospect of an increase in his wages as a fireman, or of his advancement to a more lucrative position. The uncontroverted evidence was that he was very negligent in the discharge of his duties as a fireman; that one engineer had made complaint against him, and that another had refused to make a second trip with him. The evidence indicates that the probability of his losing his position as fireman was greater than that of his advancement to a more lucrative position. There is no evidence of his fitness to earn wages in any other occupation. The evidence, to say the least of it, raises the issue of contributory negligence on the part of Saint as a proximate cause of his death. As the case was not submitted on special issues, we cannot say what the finding of the jury was on this issue, which was submitted in the general charge. But, contributory negligence aside, we do not think the evidence will sustain a judgment for more than $4,000, and therefore the judgment is excessive to the amount of $3,000.

If appellee will file in this court within 10 days a remittitur of $3,000, the judgment of the trial court will be reformed and affirmed for $4,000; otherwise, this case will be reversed and remanded.