## ATCHISON, T. & S. F. RY. CO. et al. v. ABERCROMBIE. (No. 2656.)

(Court of Civil Appeals of Texas. Amarillo. April 14, 1926.)

**1. Evidence ☞545.**

Evidence given by witnesses *held* to qualify them generally as experts on the questions of appearance, weight, etc., of cattle.

**2. Evidence ☞547.**

Expressions used by witnesses testifying as experts, and allowed to give their opinions, "I imagine," "I guess," "I think," *held* tantamount to saying, "It is my opinion."

**3. Carriers ☞228(5)—The part of shrinkage of cattle in course of long transportation caused by negligence must be shown for judgment on account thereof.**

Judgment against carrier for damage to cattle from shrinkage is not warranted by evidence of delay at pens and shrinkage in course of long transportation; there being no evidence of the part caused by negligence as distinguished from that naturally and necessarily caused by long shipment, for which carrier is not liable.

Appeal from District Court, Clay County; Vincent Stine, Judge.

Action by G. T. Abercrombie against the Atchison, Topeka & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

---

Thompson, Barwise & Wharton, of Fort Worth, and Taylor, Muse & Taylor, of Wichita Falls, for appellants.

J. R. Moore, of Archer City, and R. Loftin, of Henrietta, for appellee.

RANDOLPH, J. This suit was instituted by appellee against appellants to recover damages to a shipment of nine cars of cattle, shipped over appellants' railroads from Thoreau, N. M., by way of Amarillo, Tex., to Fort Worth, Tex. The case was submitted to a jury in the trial court upon special issues, and in answer to such issues the jury found: That the appellants did not use ordinary care in transporting the cattle; that the cattle shrunk in weight by reason thereof and were damaged thereby in the sum of $285; that by reason of the defendants' failure to use ordinary care in transporting said cattle the cattle declined in class and appearance in such manner as to affect their market value in the sum of $1,715.

[1] Appellants' first proposition charges error on the part of the trial court in permitting the witnesses Hildebrand and Abercrombie to testify, over the objection of defendants, as to the weight of the cattle in question without first having shown themselves qualified to give an opinion thereon. Hildebrand testified that he had been in the cattle business a good while; that he had previously made eight or nine shipments from Thoreau, N. M., to Fort Worth, Tex.; he also testified to facts which showed his familiarity with the condition of the cattle at the time of the shipment, and was the caretaker to Wichita Falls. He then testifies:

"Sometimes I can look at cattle and make a pretty close guess what they will weigh. I have bought and sold quite a lot of cattle. These big steers ought to have weighed 1,000 pounds on the market at Fort Worth. In figuring what they will weigh on the market I take into consideration the time it takes to transport them. In making this estimate I allow for shrinkage. The yearlings should have weighed 580 pounds on the market."

Abercrombie testified that he had been in the cattle business all of his life, and that he was the owner of the cattle in question; that when they were loaded Hildebrand had accompanied them as far as Wichita Falls as caretaker; that he (Abercrombie) had much experience in shipping cattle; had seen a great many cattle shipped in and out; and had bought and sold cattle for 30 years. He further testified:

"I don't know what the shrinkage would be over this particular route. I have made other shipments of like distance. It is a pretty hard question. If you move them in a rainy time, or dry time, it makes a difference. As to this particular time, I guess the shrinkage is really higher than it is in dry times. I imagine it was somewhere between 60 or 70 pounds. If these cattle had reached Fort Worth in 75 hours, I think they would have weighed 1,000 pounds. My opinion is that they would have weighed 1,075 at Thoreau when they were loaded in the cars—that is, the large ones. The small ones about 600 pounds, I thought."

This evidence, given by the witnesses, qualifies them generally as experts upon the questions of appearance, weight, etc., of the cattle. The objections urged go to the weight of the testimony rather than to its admissibility. Gulf, C. & S. F. Ry. Co. v. Houghton et al. (Tex. Civ. App.) 68 S. W. 718.

[2] The witnesses, testifying as experts, were allowed to give their opinions, and the expressions used by them, "I imagine," "I guess," "I think," are tantamount to them saying, "It is my opinion."

[3] Appellant's propositions Nos. 2 and 3 charge error in the trial court's rendering judgment in favor of the plaintiff for the sum of $285 damages to the cattle by reason of shrinkage, since the testimony in the case wholly fails to show the amount of damage due to shrinkage, and in rendering judgment for $1,715 damages on account of decline and class of appearance, which shrinkage and decline in appearance is not shown separate and apart from such shrinkage and decline in appearance that would naturally follow the transportation of such shipment for the distance this shipment was transported. This contention must be sustained. From the testimony set out above, it will be seen that the weight of the cattle is given in the opinion of the witnesses, and the same witnesses testify that the cattle were in good condition at the time they were loaded on the cars. The witness Hildebrand also testifies to the detention of the cattle in muddy pens both at Clovis and Amarillo, and also as to the 30-hour delay in reaching their destination. The witness Farmer, who handled the cattle for sale at Fort Worth, testified that he had observed the cattle several times, and that their selling appearance was badly damaged when they got to Fort Worth; they appeared to be in a rough condition, drawn, gaunt, muddy, and a few bruised cattle—referring to the cattle that he sold at Fort Worth. But there is no evidence that such shrinkage was caused by the detention in the muddy pens or that the stale appearance of the cattle was produced by the negligence of the defendants. It is presumed that in transporting such a shipment of cattle the distance this shipment was transported that there will be more or less shrinkage, and that the cattle will be to a certain extent stale in appearance. This the law contemplates as a natural result following such shipment. If this was the only result, the defendants were not guilty of negligence. The evidence nowhere discloses that there was an excess of shrinkage over and above that which was caused by the exercise of ordinary care on the part of defendants or after an ordinary run of their train, and does not show what part

if any, was due to negligence of the defendant. In other words, the jury had no basis upon which to render their verdict, because there was no evidence that the delay and detention in the pens produced the damage, or any part of it.

Injury or depreciation is naturally and necessarily caused by long shipments, even when the carriers exercise due care and diligence in the transportation. For such injury or damage not occasioned by the carrier's negligence no recovery can be had. St. Louis, I. M. & S. Ry. Co. v. Moon, 103 S. W. 1176, 47 Tex. Civ. App. 209; St. Louis Southwestern Ry. Co. v. Smith, 77 S. W. 28, 29, 33 Tex. Civ. App. 520; International & G. N. R. Co. v. Young (Tex. Civ. App.) 72 S. W. 68.

For the errors indicated, the judgment of the trial court is reversed and remanded.